Nash, C. J.
 

 The efficacy of a plea of insanity in shielding from punishment for crime; the necessity of drawing the dark picture of such a state of mind, and tracing out the minute and delicate shades of this sorest affliction to which humanity is subject, is not required at our hands at this time. It is not denied, that insanity, to protect from punishment, must exist at the time the act is perpetrated. This is indeed the very substance of the defense; for, lioAvover great the disease, and in Avhatever form, if, at the time the prisoner commits the act, his mind is then capable of distinguishing between moral right and wrong, he is an accountable being, and comes within the operation of the laAy,
 

 
 *248
 
 The prisoner, a fortnight before the perpetration of the offense, had been in a state of delirium tremens, from which he was relieved by his physician, who cautioned him against indulging in the use of spirits. After that, he was proved to have been in his right mind ; but a few days before that on which the transaction occurred, one witness thought he was not in his right mind. Ilis Honor instructed the jury as follows : “ The general presumption is that all persons are sane, until something is shown to the contrary. When derangement, or partial insanity, is shown, and there are lucid intervals, it is still necessary for one relying on insanity to show that the act was done when he was laboring under this paroxysm of insanity.” Ilis Honor then proceeds to apply these general principles to the case before him, stating the grounds upon which the State relied, and those upon which the prisoner rested his defense, and winds up by leaving the question of sanity or insanity of the prisoner at the time of committing the act, to the jury.
 

 This case is not one of permanent insanity, nor is it one of lunacy. Mr. Russell, at page Y of his Criminal Law, defines a lunatic to be one laboring under a species of
 
 dementia accidentalis vel
 
 adventitia, but distinguishable in this, that he is afflicted by his disorder, only at certain periods or vicissitudes, —having intervals of reason. It more properly ranges itself under the class of partial insanity, though strictly, not so. Partial insanity imports that the person is insane on one or more particular subjects. Shelford on Lunatics, p. 6. This species of insanity is termed monomania. The derangement of the prisoner was neither a permanent one, nor lunacy, nor strictly, partial, but a temporary one arising from the too free use of ardent spirits. It was temporary, for it lasted only during the time the effects of the spirits were upon him. It had not in his case reached that period when the mind becomes entirely destroyed. Ilis physician cured him of the attack of delirium tremens, and stated, that in most cases the alienation of mind was but temporary. It was shown that after that attack, and before the act was committed, he was restored to his under
 
 *249
 
 standing, and there was no evidence that delirium tremens ex- ■ isted after the time first spoken of. It was insisted by the prisoner’s counsel, that the presumption of sanity, in favor of the State, did not arise ; but that the presumption of insanity d’id, on behalf of the prisoner ; and that sanity must be shown by the State; at least that tlie presumption was not in favor of the State. This principle, if true, does not apply to this case. Here, was no lunacy ; no recurrence of the disease at certain periods ; but a temporary insanity, brought on by the prisoner’s own procurement, and, in general, disappearing when the immediate cause was remo ved. Drunkenness, in general, is no excuse for crime. When it is carried so far as to cause delirium tremens, any act perpetrated under the delirium is excused, though the disease is hut temporary; and when continued so far as to dethrone reason altogether, the presumption of law is removed; because the disease is then permanent : the law looks only to the state of the mind, and. not to the cause producing it.
 

 His Honor is sustained in his general proposition by Lord Hale. P. C. vol. 1,84. lie lays down the doctrine more strongly than it is done here; and although we find it nowhere stated in the same terms, we find -it nowhere contradicted in our elementary works on dimes.
 

 In this case, the general presumption of law was not removed, and it was incumbent on the prisoner to -show that rat the time of perpetrating the offense, he was insane.
 

 After his Honor had closed his remarks, particular instructions were asked, as set forth [in the case. His Honor had already given the instructions required. There is no error.
 

 Pee Curiam.
 

 Judgment affirmed.