## G. A. Kelly Plow Company v. R. W. London.

Decided February 10, 1910.

### 1.—Contract of Employment—False Representation—Position of Trust.

One seeking and obtaining employment in a position of trust and confidence impliedly warrants that he is an honest man, and the discovery by the employer of the fact that he had obtained the employment by false representations showing a lack of moral qualities and untrustworthiness would be ground for his discharge though the representations did not relate to or affect the employer's business, and there had been no breach of contract by the employee.

### 2.—Same—Case Stated.

To an action for wrongful discharge of plaintiff from the position of manager of sales for an implement company with power to direct the movements of traveling salesmen and the prices of goods, which position plaintiff held under a contract for a fixed salary for five years, defendant alleged in answer that the position was obtained by false and fraudulent representations by plaintiff as to the salary he was then getting from his employer, a company engaged in similar business, and his standing with such company and the offers made by it for the purpose of retaining him in its service, and that he was discharged by defendant on learning of the falsity of such representations. Plaintiff excepted on the ground that the representations alleged were

immaterial, in no way affecting defendant's business, which was not charged to have suffered in consequence. Held that the exceptions were properly overruled.

### 3.—Fraud—Condonation—Charge.

Where the employee was discharged from a position of trust and confidence because of the discovery by the employer of facts affecting his character for honesty, though not, so far, affecting the master's business, a charge that a retention in his employment and failure of the employer to discharge on learning the facts, would condone the matter and deprive the employer of the right to discharge on such ground, was erroneous. The question of condonation or continued right to discharge was one of fact to be determined by the jury. Dishonesty, like incompetency, is a continuing condition, and the right to discharge therefor not lost by retention in employment under circumstances not amounting to equitable estoppel.

### 4.—Discharge of Employee—Measure of Damages.

The action being for wrongful discharge of an employee under a contract for five years' service and who had thereafter obtained other employment for a like term at a less compensation, it was improper to charge that the measure of damages, the five years not having expired, would be the difference in the compensation under the respective contracts. Other matters, such as the character of the two contracts, the situation of the parties, uncertainty of life or ability to perform, prospects for promotion, etc., should be considered; and not the difference in wages to be earned, but the value of such difference as a present payment should be considered, where the compensation was for loss of a contract having several years of performance yet to run.

### 5.—Charge—Weight of Evidence.

A charge that the act of one employed in a position of trust in defrauding a third party could not justify his discharge by his employer was upon the weight of evidence and improper.

### 6.—Evidence—Personal Injury—Derailment of Train.

On the question whether a passenger seated in a railway coach which was derailed received any serious injuries thereby, evidence as to the effect of the shock on other passengers, seated or standing, was admissible to show the extent of the jar.

### 7.—Contract—Writing—Parol Evidence.

Though a written contract showed the compensation for services agreed on, evidence of a parol agreement that a part thereof was to be returned was admissible.

### 8.—Evidence—Letters.

The admission of a part of the contents of letters not necessary to an understanding of the portions thereof relevant to the issues was unwarranted, but is held harmless and not ground for reversal.

### 9.—Evidence.

In an action for damages by wrongful discharge of plaintiff, evidence of the salary he was receiving from another employer four years previously and of the salary offered by the employer to another to take his place after his discharge was irrelevant and improperly admitted.

Appeal from the District Court of Gregg County. Tried below before Hon. W. C. Buford.

*Young & Stinchcomb,* for appellant.—It was a question of fact for the jury to determine as to whether or not the appellant con-

doned the actions of the appellee by retaining him in service after knowing of his false representations and misconduct. Hughes v. Toledo Scale Co., 86 S. W., 895; Parks v. Tolman, 87 S. W., 576; Jones v. Trinity Parish, 19 Fed., 59; Lord v. Goldberg, 22 Pac., 1126; 26 Cyc., 989; McMurray v. Boyd, 25 S. W., 505; Jonas v. Field, 3 So., 893; Wood on Master and Servant, secs. 114, 115, 118 and 123; Wyatt v. Brown, 42 S. W., 478; Shute v. McVitie, 72 S. W., 433.

The measure of damages in a suit for a breach of contract of employment by an employe is the amount of damages suffered, if any, up to the time of the trial. Pacific Exp. Co. v. Walters, 42 Texas Civ. App., 354; Litchenstein v. Brooks, 75 Texas, 196; Southwestern Tel. & Tel. Co. v. Bross, 45 S. W., 178; Mudgett v. Texas T. T. G. Co., 61 S. W., 149; Lee v. Dow, 51 Atl., 1072.

The appellee's special charge No. 6 is upon the weight of the testimony, in that it instructed the jury that if they found that the appellee was injured, regardless of the extent, and that he practiced a fraud for the purpose of obtaining the settlement with the railway company he did, the appellant would have no right to discharge him for his misconduct in practicing a fraud on the railway company. Wyatt v. Brown, 42 S. W., 478; Wood on Master and Servant, sec. 118, last of paragraph.

The witness W. D. Young, the appellee, the Pullman conductor and one or two ladies were all in the car, and testimony as to the effect the accident to the car had on each of them should be admissible. Pacific Exp. Co. v. Walters, 42 Texas Civ. App., 354; Lichtenstein v. Brooks, 75 Texas, 196.

*Lacy & Bramlette* and *U. F. Short*, for appellee.—To authorize the rescission of a contract for fraud, the representation charged to be false must relate to a material matter constituting an inducement to the contract, and must relate to the subject of negotiation between the parties. Carson v. Houssels, 51 S. W., 290; Culbertson v. Blanchard, 79 Texas, 486; Williams v. McFadden, 11 Am. St. Rep., 345; Mechem on Sales, sec. 874; Stone v. Robie, 29 Atl., 257; 9 Cyc., 425; Leiker v. Henson, 41 S. W., 862; American Bld. & L. Assn. v. Bear, 67 N. W., 500; Deming v. Darling, 148 Mass., 504; McCord Collins C. Co. v. Levi, 21 Texas Civ. App., 109; People v. Healy, 15 Am. St. Rep., 90; Daw v. Morris, 14 Am. St. Rep., 404; Hedden v. Griffin, 136 Mass., 229; Dawe v. Morris, 21 N. E., 313; Greenawalt v. Rogers, 91 Pac., 526; Adams v. Schiffer, 7 Am. St., 202.

The adjustment with the railroad company of the damages which the plaintiff claimed to have sustained in the wreck, however unfair to said company, in no way affected the nature of the plaintiff's employment by the defendant, and said defendant's business was not injured thereby. 26 Cyc., 990, 991; Child v. Boyd, 56 N. E., 609; Freeman v. Bourne, 39 L. R. A., 510; Ulrich v. Hower, 27 Atl., 243; Milligan v. Sligh F. Co., 70 N. W., 133; Wood on Master and Servant, 2d ed., 110; Larkin v. Hecksher, 3 L. R. A., 137.

The salary that plaintiff was receiving in the year 1903, four years

before the negotiations which resulted in the agreement sued on, was irrelevant and incompetent for any purpose. (17th cross-assignment.)

Any offer upon the part of the defendant to hire the services of Leroy Trice as manager of its salesmen at any price was incompetent for any purpose, and the testimony of such offer should have been excluded. (21st cross-assignment.)

The written contract made between the plaintiff and the defendant established the salary which the plaintiff was to receive for his services. The evidence offered and admitted by the court showing he was to receive a different salary or that a portion of the salary paid to him was to be refunded, varied the terms of the writing and should have been excluded. Rockmore v. Davenport, 14 Texas, 604; Bedwell v. Thompson, 25 Texas Supp., 246; Donley v. Bush, 44 Texas, 7; Belcher v. Mulhall, 57 Texas, 19; Todd v. Roberts, 1 Texas Civ. App., 8; Brown v. Wiley, 20 Howard, 448; Willis v. Byars, 2 Texas Civ. App., 134; Sanborn v. Murphy, 86 Texas, 441; Crouch v. Johnson, 7 Texas Civ. App., 435; Reid v. Allen, 18 Texas, 248; Smith v. Garrett, 29 Texas, 52; Bigham v. Talbot, 51 Texas, 453; Aultman v. McKinney, 26 S. W., 268; Peak v. Blythe, 1 Texas Civ. App., 12; Gulf, C. & S. F. Ry. Co. v. Jones, 82 Texas, 160; Janes v. Ferd Heim Brew. Co., 44 S. W., 896; Bupp v. O'Connor, 1 Texas Civ. App., 328; Saunders v. Weekes, 55 S. W., 33.

Defendant retained the plaintiff in its service and paid him the salary stipulated in the contract sued on for a period of six months after it had learned all the facts concerning the alleged misrepresentations by which it was induced to enter into said contract, and after the settlement with the railroad company which it alleges evinced such moral turpitude as justified the plaintiff's discharge. By so doing it condoned all the faults complained of and waived its right to discharge for either cause. Fitzpatrick v. McLaney, 44 So., 1023; McMurray v. Boyd, 25 S. W., 505; Auld v. Travis, 39 Pac., 357; Reynolds v. Hart, 94 Pac., 15 Dunn v. Steubing, 24 N. E., 315.

The measure of the plaintiff's damage, if wrongfully discharged from the defendant's employment, was the difference between the salary which defendant had contracted to pay him and that he was to receive from the Parlin & Orendorff Implement Company under his contract with it for the remainder of his term. Litchenstein v. Brooks, 75 Texas, 196; Roberts v. Crowley, 7 S. E., 740; Cemetery Assn. v. Weisenmann, 28 N. E., 834; Baltimore Baseball Club v. Pickett, 44 Am. St., 304; Pierce v. Tennessee, C. I. & R. Co., 173 U. S., 1; East Tenn. V. & G. R. Co. v. Staub, 7 Lea, 397; Blumenthal v. Bridges, 120 S. W., 975; Martin v. Everett, 11 Ala., 375; Lake Erie & Western R. R. Co. v. Tierney, 29 Ohio C. Ct. Rep., 83, 80 N. E., 1128; Larkin v. Hecksher, 3 L. R. A., 137; Van Winkle, v. Satterfield, 23 L. R. A., 853; McMullan v. Dickinson, 51 Am. St. Rep., 511; Olmstead v. Bach & Son, 22 L. R. A., 74; Parker v. Russell, 133 Mass., 74; Schell v. Plum, 55 N. Y., 592; Sedgwick on Damages, 8th ed., sec. 666; Hamilton v. Love, 71 Am. St. Rep., 384; 26 Cyc., 998, 1001.

HODGES, ASSOCIATE JUSTICE.—This suit was instituted in the

court below by the appellee against the appellant to recover damages for the breach of a contract. The petition alleges, substantially, that on the 1st day of July, 1907, the appellee entered into a written contract with the appellant by which he was employed for a period of five years from that date, at a monthly salary of $333.33, payable monthly; that the services to be rendered by him required him to take charge of, manage and direct the salesmen employed in the appellant's business; that after the contract was entered into he began the performance of his duties and rendered the services for which he was employed, until the 4th of April, 1908, at which time he was, without any cause or excuse, discharged from the service of the appellant; that he forthwith thereafter sought employment, and finally succeeded in making a contract with the Parlin & Orendorff Implement Company for five years beginning April 15, 1908, for the sum of $1350 for the unexpired portion of that year, and $200 per month thereafter. He sued for the difference between what he would have earned in the five years' service under his contract with the appellant, and what he shall have earned at the end of the term of service under his present contract. The appellant answered by a general denial, and specially answered, among other things, that the appellee procured the appellant to enter into the contract by reason of false and fraudulent representations made by the appellee concerning the salary that he was theretofore receiving from the Parlin & Orendorff Implement Company in that during his negotiations for the contract with appellant he represented that he was receiving from said Parlin & Orendorff Implement Company the sum of $250 per month as a salary, while in truth and in fact he was only receiving the sum of $200 per month; that during the negotiations he also represented that the Parlin & Orendorff Implement Company had offered to raise his salary to the sum of $300 per month if he would remain in its service, and again offered to raise his salary to the sum of $4,000 per year if he would remain, and further offered if this was not satisfactory to let the appellee go to the bookkeeper and state the salary he desired and that the Parlin & Orendorff Implement Company would be governed thereby; while in truth and in fact the said implement company had only offered to raise his salary from $200 per month to $250 per month if he would remain in its service; that he falsely and fraudulently represented that the manager of the Parlin & Orendorff Implement Company had called his attention to a telegram which he claimed to have received from W. H. Parlin, the president of the implement company, when he (the appellee) reentered its service, congratulating him upon said reentry into the service of the implement company and advising him never to leave said company again, while in truth and in fact the appellee had never received any such telegram from W. H. Parlin and no such message was mentioned to the appellee or brought to bear by the manager of the Parlin & Orendorff Implement Company. That the appellee on August 6, 1907, was on a passenger train on the Texas & Pacific Railway that was derailed and wrecked, and that the appellee falsely and fraudulently represented that he received serious and permanent personal injuries in

such wreck, and refused and declined to render any service to appellant by reason thereof from August 6, 1907, to October 7, 1907, during which time his services were most needed; and that appellee falsely and fraudulently represented to the Texas & Pacific Railway Company that he was seriously and permanently injured in said wreck, and by reason of said false and fraudulent representations caused the said Texas & Pacific Railway Company to pay him $4,100 damages on account of said injuries, while in truth and in fact he received no injuries whatever in said wreck; that the appellee was disloyal to the appellant in his services for it, was incapable of properly handling the position for which he was employed. It was also alleged that the contract entered into by the appellant and the appellee was a verbal one and in violation of the statute of frauds; that the false and fraudulent representations to the appellant, and his fraudulent transactions with the Texas & Pacific Railway Company were inconsistent with his employment with the appellant, which required a trustworthy and truthful man, and were likely to be injurious to the appellant; and by reason of the facts stated in the appellant's answer the appellee was discharged within a reasonable time after the appellant ascertained the fact that those representations were false and fraudulent and that his transactions with the Texas & Pacific Railway Company were also false and fraudulent.

The appellee filed a supplemental petition in which he excepted to the special defenses hereinbefore mentioned, and further pleaded that if the matters charged in the answer were true the appellant, after full knowledge of the same, had retained the appellee in its service and had thereby condoned the fraudulent representations and his want of capacity, as well as his other acts of misconduct. To this the appellant replied by a supplemental answer in which it alleged that it did not learn that any of the said representations of the appellee were false or fraudulent until after the contract of employment was made, and that immediately upon obtaining that information it began an investigation which was pursued with reasonable diligence, and that immediately upon learning that said representations were false and fraudulent it terminated the contract and discharged the appellee.

After a trial before a jury a verdict was returned in favor of the appellee for $3,000, from the judgment thereon this appeal is prosecuted.

The material facts which do not appear as being disputed show that the appellant is a private corporation engaged in the business of manufacturing and selling plows and other farming implements, with its place of business and principal office at Longview, Texas. Some time prior to February, 1907, G. A. Kelly, the president of the company, who had been actively engaged in the management of its affairs, desired to retire and turned over the business almost entirely to R. M. Kelly, his son, who was at the time secretary and treasurer. R. M. Kelly contemplated enlarging the capacity of the plant and also of extending the business of the company by employing additional traveling salesmen, and desired to employ a suitable man to take the position of sales manager of the company's

business. The duties of the sales manager were to take charge of and manage the sales department, to employ and discharge the traveling salesmen, direct their movements and assign them to territory, fix the prices upon the manufactured products and direct prices in territory where there was competition, and pass upon the responsibility of purchasers. R. M. Kelly had known the appellee for about ten years prior to the time when they began their negotiations which resulted in the contract referred to in the pleadings. These were commenced by a letter from Kelly to London asking him to call at the office of appellant on his first visit to Longview. London was at that time employed by the Parlin & Orendorff Implement Company as one of its traveling salesmen, with headquarters at Dallas. On February 18, 1907, London called upon Kelly as requested, when the latter explained the intentions of his company as to enlarging its business, and expressed a desire to employ London to take charge of the sales department. After several meetings, in a conversation concerning the details, of which there is some conflict in the testimony, a written contract was entered into by which London was employed by the appellant as sales manager for five years, at a salary of $333.33 per month, payable monthly. The contract was embodied in the following letter:

"Longview, Texas, July 1, 1907.
"Mr. Robert W. London, Dallas, Texas.
"Dear Sir: You are engaged by this company as sales manager. Your employment is to begin from this date, and is for a period of five years. Your salary is to be three hundred thirty-three and 33-100 ($333.33) dollars per month, payable monthly, until the termination of the period of five years above mentioned, and in addition we will pay your hotel, railroad, bus and livery expenses while you are away from your home in Dallas, Texas.

"You are to consult with us freely as to the policy respecting the management of the sales department from time to time, as we may request you, and when a policy has been adopted you are then required to see that said policy is carried out to the best of your ability.

"You are to suggest to us from time to time what in your judgment is needed to assist you in the management of your department, and if it is consistent we will provide same for you.

"You are to have the control of all the traveling salesmen and are to direct their movements. Revision of the salary above mentioned may be had at the end of any one of the five years above mentioned, without prejudice to the above amount, if mutually agreed to by you and ourselves at the time. If the above is satisfactory to you, please indicate by your signature below, and this shall constitute your contract of engagement.
"Yours respectfully,
"(Signed) THE G. A. KELLY PLOW COMPANY,
"By R. M. Kelly, Secretary and Treasurer.
"The above is satisfactory.
"(Signed)          Robert W. London."

There are some other facts connected with the execution of this contract about which the witnesses differed and which will be referred to later. After the execution of this contract London entered upon the duties of his position and continued therein till August 6, 1907, at which time he claimed that he was injured in a wreck on a Texas & Pacific Railway train while going from Dallas to Longview. From that time until October 4 he did not perform any services for the appellant. On the latter date he made a settlement with the railway company, in which he was paid $4,100 compensation for injuries which he claimed had been received in the wreck referred to. He then returned to work for the appellant, and continued in its service till he was discharged April 4, 1908.

The two principal witnesses concerning the making of the contract were R. M. Kelly and the appellee. There is much conflict between them as to the details of the conversations which they had at different times before the making of the contract. The effect of the testimony of Kelly was that at the first meeting between him and London before making the contract, the latter represented to him that he was then getting $250 per month from the Parlin & Orendorff Implement Company, but would accept the position offered for $300 per month. Witness further stated that he afterwards met London in Dallas, and was there told by him that Mr. Robinson, the local manager for the Parlin & Orendorff Implement Company, "was all broken up and torn to pieces" about his (London's) leaving; that London told him that Robinson had told him (London) that he would meet any price that the Kelly Plow Company could afford to pay him; that if it offered him $3600 he would meet that; if it offered him $4000 he would meet that, and if that was not satisfactory he (London) could go to the bookkeeper and tell him what would be satisfactory and that it would be all right with him (Robinson). Kelly says this led him to believe that London was an exceedingly valuable man in that line of business and that Robinson had implicit confidence in him; that he had formed a very high opinion of London, and believed every thing the latter told him. He further testified that London took him to the office of the Parlin & Orendorff Implement Company, but Robinson was not there; that during this conversation London stated to him (Kelly) that when he went back to the Parlin & Orendorff Implement Company's service from the Studebaker Company he received a telegram from W. H. Parlin, of Canton, Ohio, the president of the implement company, congratulating him on returning to the service of the company, and that the telegram closed as follows: "I hope nothing will allow you to leave our service again;" that London said that on that morning Mr. Robinson had called his attention to that telegram. Kelly states that he expected to talk to Robinson about London, but did not have an opportunity of doing so. He also says that he gave London to understand that the position he was to fill was a confidential one; that London came to Longview on the 2d of July, and they entered into the contract as of July 1. Some three or four days before that Mrs. London called him over the 'phone and told him that if he would pay her husband $4000 per year they would come to Long-

view; and he told her in reply that he could not pay more than $3600. Kelly further testified that on August 6, 1907, London claimed that he received injuries in a wreck on the Texas & Pacific Railway; that he saw him examined, but could not see anything wrong. He then began to make an investigation about the matter and also about the salary, but was handicapped in so doing because London lived in Dallas and the headquarters of the railway company were at that place as well as the headquarters of the implement company; that he was busily engaged with his own affairs at Longview. He went to Dallas in October, some time during the Fair, and called to see Mr. Robinson, of the Parlin & Orendorff Implement Company; asked Robinson what salary London was getting at the time he employed him prior to that time, and was told that it was $200 per month. He had been in Dallas before, but Robinson was not in and he did not see him. He did not say anything to London about this matter, because he had his suspicions about the injuries he claimed to have sustained in the wreck and wanted to confirm those suspicions or have them cleared up. That at the time London was laying off on account of his injuries was the very time when the trade of the Kelly Plow Company should have been looked after very closely, and his services were very much needed. He says that when London returned to work he never told him he had settled his claim with the railway, or intimated that he had any claim against the railway company; that when he reported for work he looked as well as ever—he could not see any difference in him. Witness said he continued to investigate as best he could as to whether London was injured or not when he was laid off, but was very busy and could not devote much time to it. It was late in the winter before he found out that London even had a claim with the railway company at all, although he had made some inquiries before that. Witness also testified that just as soon as he got all the information he could concerning the railway matter he told London what he had heard in regard to his salary, but did not mention the railway occurrence because at that time he did not have evidence at hand and would not bring up anything he could not prove. He mentioned this matter to London on March 6, 1908. This, he says, was the first time he saw London after making investigation in the railway matter. When he confronted London with that evidence the latter said he was mistaken; he did not deny telling Kelly that he was getting $250 per month, but began to explain that Mr. Robinson's books would show that he was getting $200 per month, but that he had a side agreement with Mr. Robinson by which he was to receive $600 in addition thereto.

The effect of the further testimony of this witness is that London agreed to return to Dallas and see Mr. Robinson and have the matter cleared up; that after London reached Dallas Kelly received a letter from him in which London stated that after thinking the matter over he had decided that there was absolutely nothing to be done or considered, and that he would simply "pass the matter up;" that upon London's refusal to make any attempt to straighten the matter with reference to the discrepancies regarding his salary, he dis-

charged him. This testimony was in many respects denied by London. He stated that he told Kelly that his salary with the Parlin & Orendorff Implement Company was $3000 per year; that his salary was $200 per month, with the condition that he should receive $600 additional if he remained in the service for one year. W. M. Robinson, the manager of the Parlin & Orendorff Implement Company, testified that London was in the employ of the Parlin & Orendorff Implement Company at a salary of $200 per month; his contract was to work by the year at a salary of $2400 per year, to be paid monthly at $200 per month, and that he was not to receive any additional compensation; that some time about March or April, 1907, London told him that the Kelly Plow Company had offered him a salary of $3600 per annum, and he told the appellee that it was a larger amount than he could afford to pay, and that if he could make the arrangement he (Robinson) was not disposed to stand in his way, and advised him to accept the position. He offered appellee $50 per month additional, which would make $250 per month, if he would sell $200,000 worth of goods per annum.

As to the fraud which it is alleged the appellee perpetrated upon the railway company in procuring a settlement by which he was paid $4,100 as compensation for injuries claimed, appellant offered testimony tending to show that the shock to the coach in which the appellee was at the time riding was so slight that no injury could have resulted; that an observation of the physical condition of the appellee after the wreck failed to disclose any evidences of the injuries he claimed. There was also testimony of doctors who had made an examination of London, to the effect that if he was injured at all it was only in a slight degree. Considered in its entirety, the evidence offered by appellant upon this phase of the defense tended to show that London's injuries were simulated, and that he had by dishonorable means, false statements and misrepresentations perpetrated a fraud upon the railway company for the purpose of obtaining money. As opposed to this there was testimony on the part of the appellee tending to show that his injuries were real, and that he had made no false representations to the company and had not been guilty of any of the misconduct charged.

Upon a trial before a jury a verdict was rendered in favor of the appellee for the sum of $3000.

Appellant's first assignment of error complains of the following special charge given at the request of the appellee: "Although you may find and believe from the evidence that, pending the negotiations between plaintiff and defendant concerning the hire of plaintiff's services that ended in the contract sued on, the plaintiff represented to R. M. Kelly, Tr. and Sec. of defendant, that he was at the time receiving $250 per month from the Parlin & Orendorff Implement Company, for whom he was at that time working, and that said company had offered him $300 per month to remain, and the said Kelly was influenced by said representations to make the contract sued on, and although you should further find that plaintiff, by any false and fraudulent representation, imposed upon the Texas & Pacific Ry. Co. and its representatives and secured from them a

settlement of his damages greatly in excess of any demand which he had the right to make, yet if you further find that defendant, with knowledge of both these facts, after obtaining said knowledge, permitted the plaintiff to remain in its service and perform for it the duties which he undertook to do and perform, after knowledge of said facts came to it, then said defendant thereby condoned the faults in making said statements and waived any right it had to discharge him on account of making same." The court had previously in his general charge submitted to the jury the issue of condonation by retention in the service after knowledge of the misconduct. The effect of this special instruction was to relieve the jury from the consideration of that issue further than to ascertain whether or not there was in fact such a retention in the service. If this was found to be true there was nothing left for them to do but return a verdict in favor of the appellee. In all cases where misconduct, or acts amounting to a breach of the contract, is made the grounds for the discharge of an employe, and condonation or waiver is relied upon to meet that defense, the issue is one of fact to be decided by the jury, except in those instances where the evidence is of such a character as would warrant the court in assuming its sufficiency or insufficiency as a matter of law. Gray v. Shepperd, 41 N. E., 500; Moynahan v. Interstate Milling Co., 72 Pac., 81; Wood on Master and Servant, sec. 123.

Under the facts of this case it was for the jury to say: (1) Whether the charges of misrepresentation and fraud urged in the defense were true; (2) if true, then whether they were of such character or so inconsistent with the relations of the contracting parties, as justified the discharge of London; and (3), if these issues be decided in favor of the appellant, then whether by his subsequent conduct the appellant had not waived its objection to the misconduct and thereby lost its right to rescind the contract on that account. Upon the trial the appellee presented exceptions to those portions of the appellant's answer setting up the acts of misrepresentation and fraud relied on as a defense, all of which were by the court overruled. Numerous cross-assignments complaining of that ruling are now before us and should be considered in this connection. Counsel for the appellee insist, in opposing the materiality of the error, if any, embodied in this special charge, that the facts alleged and shown by the evidence offered by the appellant, even if true, constituted no defense to this action; that it was neither alleged nor proven that the fraud and misconduct in any way affected the business of the appellant, or that his business in any way suffered any injury therefrom. From this it is argued that the fraud, misconduct and false representations charged against the appellee were wholly immaterial, and that the exceptions urged against that portion of the answer should have been sustained. If this contention is correct there was no reversible error in giving the charge here complained of.

We are not prepared to concur in the views urged by the counsel for the appellee upon this proposition. The uncontroverted evidence shows that by the terms of his contract with the appellant London

was to take charge of the sales department of the business of the G. A. Kelly Plow Company; that he assumed supervision of all the traveling salesmen employed, had the right to fix prices of the product placed upon the market, and to make special prices in competitive territory; passed upon the contracts of sale when made, and was vested with such full authority and discretion as might make him the representative of his employer in that department of the service. This necessarily placed him in a position of trust and confidence and one of much importance to the appellant. The jury might very properly have inferred that such employment would carry with it implicit reliance by the principal, not only upon the competency of the agent, but upon his honesty and integrity as well. They might have concluded that this reliance was one of the essentials without which the functions assumed by the agent could not be adequately and satisfactorily performed.

If the foregoing conclusions be correct, then it follows that an important inquiry in determining the materiality of the facts pleaded must be as to whether the falsehoods and misconduct alleged disclose a moral depravity in the agent, London, inconsistent with the position he occupied. The argument of the appellee proceeds upon the theory that the materiality of the misrepresentations and fraud charged must be tested by their immediate effect upon, and relation to, the subject matter of the contract, the business of the appellant. We are unable to appreciate the force of that argument as applied to the facts of this case. Here the question is, has the agent shown himself unworthy of the confidence and trust which his position implies should be reposed in him, and not as to whether he has been guilty of any breach of his contract, or has adopted a course of conduct that will injuriously affect the business of his principal in the future. If the different acts of deception, misrepresentation and fraud charged in the answer of the appellant be true, then we can not say that a jury would not be justified in concluding that they were inconsistent with the relations London sustained by his contract.

Everyone who seeks and obtains employment in positions of trust and confidence impliedly warrants that he is an honest man, and the employer has the right to expect the possession of that personal integrity that will not lead to disappointment if he relies implicitly upon the honor and fidelity of his employe. When the principal discovers that his agent, or the master his servant, is lacking in those moral qualities that he had a right to expect and rely upon in making the particular contract; in other words, ascertains that his employe is not an honest man and can not be trusted, why should he not have the right to discharge? If he may discharge for incompetency, either physical or mental, why should he not have the same right when moral unfitness is shown, where moral qualifications form an important consideration in making the contract? We see no good reason why an employer should not be permitted to rid himself of a dishonest and corrupt employe, upon a discovery of that fact, without waiting till he has himself been victimized by such corruption and dishonesty. He would have the right to assume

that a man who would deliberately make a false statement about one matter would be equally perfidious about another; that a man who would wilfully and knowingly perpetrate a fraud upon one party for the sole purpose of obtaining money would, when to his interest to do so, defraud his employer also. Hence, the materiality of the facts pleaded in this case must be tested by their effect upon the appellee, as tending to show a degree of moral depravity inconsistent with the position he held in the service of the appellant. It was for that reason unimportant that the false statements and misconduct alleged related to matters in no way connected with the subject matter of the contract, or did not amount to a breach of duty toward the employer. No agent occupying a position of trust and confidence can say that his principal had no right to assume that he was honest and truthful, or that his lack of personal integrity furnished no just grounds for a discharge. He might contest the fact of his dishonesty or want of integrity, but not its legitimate consequences toward his character. To illustrate the view we take, let us suppose one employs as his agent a person with whom he has had no previous acquaintance to fill an important position, one necessarily involving the repose of trust and confidence in the personal honesty and integrity of the agent. Some time afterward the principal is made aware of the fact that his agent is a noted criminal, or that at or about the time of his employment the agent had been guilty of such deception and fraudulent conduct as stamped him at once as a dishonest and untrustworthy employe. Would it be seriously contended that the right of discharge could be exercised by the principal only when it became apparent that his own business was injuriously affected by having such an employe in his service? Would not common justice accord him the right to terminate the contract solely upon the ground that he might justly apprehend that he would in all probability be made the object of his agent's cupidity and fraud? Could the agent complain when he had not disclosed his past record, because the principal then sought to relieve himself from a relation which he would not have made had he known the true facts? No man is compelled to be dishonest, or to be guilty of fraudulent conduct; neither should any other be compelled to continue such a person in a position of trust, simply because he took him for a man of integrity and gave him employment. It is no answer to say that an employer should first acquaint himself with the character of his agent. It would ill become any man to say that another should not have trusted him.

So far as our research has extended, we have found no adjudicated cases sufficiently resembling this in the facts to be considered pointed authority upon the propositions discussed. But we believe the views expressed are in accord with established legal principles. The court below did not err in refusing to sustain the exceptions to that portion of the appellant's answer pleading the facts we have referred to. Wood on Master and Servant, sec. 110; Mechem on Agency, secs. 214, 215.

The court had no right, under the facts of this case, to assume as a matter of law that the mere retention of the appellee in the service

of the appellant, after its officers had acquired a knowledge of the alleged misconduct, operated as a condonation of the offense and took away the right of discharge on that account. There is nothing in the evidence adduced upon the trial that would justify taking that issue from the jury in the manner done by the special charge complained of. In fact, we are not prepared to say that a plea of condonation can be made applicable to a case such as this is shown to be. Condonation gathers its most essential elements from the principles of equitable estoppel. We can now call to mind no instance in which that plea has been appropriately urged where the facts failed to show that it would be inequitable and unfair to the employe to justify the discharge upon the ground of former misconduct. If the right to discharge for lack of honesty and personal integrity in the employe ever once arises it is difficult to conceive of a situation where it would be forfeited merely because there had been an indulgence by his employer. It is doubtless true that where an employe who has in the past been guilty of conduct which tends to reflect upon his honor and personal integrity, or has committed offenses involving moral turpitude, discloses those facts at the time of his engagement and is employed with full knowledge of their existence, such offense could not thereafter serve as sufficient excuse for his discharge. It may also be true that where the misconduct occurs after employment, and the employe confesses his dereliction and upon a promise of reformation is retained in the service, his employer would be equally estopped by such retention unless other offenses, reasonably justifying the belief that the promise of reform had not been kept, should subsequently occur. But such instances are quite different from those where the employe contests the right of discharge upon the ground that the accusations against him are false, or if true, are legally insufficient. In applying the principle of condonation we must distinguish between that class of cases where the misconduct in issue is merely a breach of duty due from the employe to his employer, or where it is of such a character as may injuriously affect the master's business, and that other class in which the conduct is complained of as revealing a character for moral depravity inconsistent with the position occupied. In the first instance, by a continuation of the service after knowledge by the master the servant might justly assume that his dereliction had been overlooked, and be fairly induced to rely upon the continued observance of the original contract and adjust his situation accordingly. Such instances probably fall within the rule requiring one to whom the right of enforcing a forfeiture has accrued to use reasonable diligence in its exercise, or it will be considered as waived. In the second class the misconduct in question is not to be regarded as ipso facto forfeiting the right of the employe to insist upon a continuation of the contract, or as of itself conferring the right, but only as evidence of the moral unfitness of the employe. The right of discharge, if any, must rest upon the legitimate inferences to be drawn from that conduct, upon the particular character which it reveals, and not upon the mere occurrence of misconduct itself. If it is sufficient to disclose the lack of honesty and personal integrity

in the employe inconsistent with the position which his contract has given him, this may be looked upon as a continuing condition, not ceasing with the happening of the particular conduct from which it has been inferred. Hence, it could hardly be said that the question of condonation of the particular misconduct here relied upon was in issue; because the most important details of it did not affect the appellant in any way. To say that appellant condoned those acts would be simply to say that it condoned the evidences of the main fact upon which its defense is based. Dishonesty of character is as much a continuing condition as incompetency, and probably more so, yet it has been held that the right to discharge for incompetency is not lost by a continuation in the service after its discovery. United Oil Co. v. Grey, 47 Texas Civ. App., 10, 102 S. W., 934; Glasgow v. Hood, 57 S. W., 162.

On the measure of damages the court gave the following charge: "You are further instructed that if you find that plaintiff was wrongfully discharged as explained, the measure of his damages would be the difference between the sum which defendant was to have paid him under the written agreement sued on in this case, if you find it made such agreement, and the sum he would earn under the contract which he alleges he made with the Parlin & Orendorff Implement Co. after his alleged discharge from the defendant's service." It is admitted that the amount actually found by the jury in this trial would make the error embraced in this charge immaterial if the judgment should not for other reasons be reversed. In view of the fact that the case must be tried again, it becomes our duty to consider this assignment. The testimony shows that London was discharged by the appellant on April 4, 1908, and that on the 15th day of the same month he entered into a five year contract with the Parlin & Orendorff Implement Company by which he was to receive $1350 for the remainder of the year 1908, and $200 per month thereafter, payable monthly. It also appears from the terms of the contract with the appellant that it would not expire till June 30, 1912, more than two years from this time. The charge of the court assumed as a matter of law that the difference between the amounts to be paid under the two contracts till June 30, 1912, was the correct measure of appellee's damages. We think this was error. Actions of this class are not suits to recover unpaid wages, but for damages, and compensation for the injury sustained is the object sought. Lichenstein v. Brooks, 75 Texas, 196, 12 S. W., 975; 3 Sutherland on Damages, sec. 692. The rule for ascertaining the amount which should be awarded to an employe who has been discharged in violation of his contract is usually stated to be the difference between what he would have received under the broken contract had it been continued, and that which he may by the exercise of ordinary diligence receive in some other employment. This rule does not necessarily imply that when the employe after his discharge has made a second contract, even though it may be one of which the opposite party could not complain, the difference in the value of the two fixes, as a matter of law, the amount of damages. In passing upon the question of damages the jury should be left free

to take into consideration the character of the two contracts, the situation and condition of all the parties, the probability, or improbability, of the discharged employe being able to carry out his first undertaking, the vicissitudes and uncertainties attending life, and the likelihood of a promotion before the end of the term of the broken contract. Where the case is tried before all of the wages under the original contract become due, the jury should likewise be permitted to consider the value of present payment. From all these they should award such damages as the employe shows he has actually sustained by reason of his wrongful discharge. The charge of the court required the jury to award to the appellee the full amount he would have received under his contract with the appellant, less what he is to get under his present contract with the Parlin & Orendorff Implement Company, notwithstanding all of his wages under appellant's contract would not have become due till more than two years from the date of the trial. Upon another trial this should be corrected.

Special charge No. 6 given at the request of the appellee was on the weight of the evidence and should have been refused. The appellant offered to prove by the witness W. D. Young certain facts relating to the extent of the jar of the train caused by the wreck in which the appellee claimed that he was injured. Young testified that he was sitting by the side of London at the time. Had he been permitted he would have testified that the jar was such that he felt it, but it had no effect on him and did not in any way injure him, and never moved him from his position in the seat; also that at the same time the Pullman conductor and two ladies were standing up in the end of the car, and that neither the derailment, the running of part of the train off the track, nor the stopping of the train threw them, or any of them, off their feet. One of the ladies was standing in the aisle of the Pullman car with a baby in her arms, and it did not throw her any distance; she made only one or two steps and remained standing. This testimony was excluded upon the objection that it was immaterial. We think this was error. If it became proper and pertinent to inquire into the truth of the representations made by London concerning his injuries, it then became material to consider all the circumstances attending the occurrence of the wreck, and other surroundings, to enable the jury to ascertain whether or not he had in fact been injured. Testimony tending to show the extent of the jar, or jolt, by which London claimed he was injured, was material and important as bearing upon the question as to whether or not he had in fact received any injuries at that time; and for that reason we think the testimony should have been admitted.

Appellant's seventh assignment of error and appellee's twenty-second and thirtieth cross-assignments appear to be in conflict. One complains of the rejection of certain testimony offered by appellant, and the other objects to its admission. The appellant's bill of exceptions shows that the testimony was rejected, while that of the appellee shows that it was admitted over his objection. The testimony referred to is that of R. M. Kelly, and is as follows: "When Lon-

don came down on the 2d of July he brought two contracts that he had drawn up himself, both of them in duplicate, exactly alike except that one had $300 a month as the salary, and the other $333.33 per month; and he handed both of them to me and stated that it mattered little to him personally which one he signed, but that his wife did not want to leave Dallas and did not want to make Longview her home, and if I would sign the one for $333.33 it would please her and satisfy her, and at the end of the year he would return $400 of the $4000; and I signed it, considered that we were only paying him $3600 a year." We find this testimony in the statement of facts as having been given by Kelly, and assume that it was admitted. The objection is that it tended to vary the written contract pleaded and relied upon by the appellee. As against this objection we think the evidence was properly admitted. The effect of the testimony did not necessarily contradict or vary the written contract referred to in which London was to receive $333.33 per month in monthly installments, but was to show that the writing did not embrace all of the terms of the agreement made by the parties at the time; that there was a provision of that contract calling for a return of a portion of the salary at the end of each year. This, we think, brings this testimony within the rule applicable where a part only of an agreement between the parties is reduced to writing, and permits parol evidence to show the remainder. Thomas v. Hammond, 47 Texas, 51; Quigley v. Shed, 58 S. W., 266; 9 Ency. of Evidence, 350, and cases cited.

Portions of letters written by appellee to the appellant and admitted over objection are complained of in assignments Nos. 9 and 10. These portions of those letters could have served no useful purpose, and should have been excluded. It does not appear that they could contribute anything to a proper understanding of the extracts previously offered by the appellant. We think, however, that their introduction was of such small consequence that we should not feel inclined to reverse the judgment on that account.

We sustain cross-assignments Nos. 17 and 21. All of the remaining assignments and cross-assignments which have not been discussed are overruled.

The judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*