## EUBANKS v. GALVESTON, H. & S. A. RY. CO.

### No. 1661—6131.

Commission of Appeals of Texas, Section A.

May 3, 1933.

Charles Murphy, of Houston, for plaintiff in error.

Baker, Botts, Andrews & Wharton and Arterbury & Coolidge, all of Houston, for defendant in error.

CRITZ, Judge.

The main facts of this case are set forth in the opinion of the Court of Civil Appeals, which is reported at 42 S.W.(2d) 475, and we refer to that opinion for a full and detailed statement of the case. In order, however, that this opinion may be complete within itself, we make the following abridged statement:

### Statement.

This suit was originally filed in the district court of Harris county, Tex., by T. S. Eubanks against Galveston, Harrisburg & San Antonio Railway Company to recover damages, for the breach of a contract between the railway company and the organization of the railway company's employees, of which he was a member. The case was tried in the district court with a jury, but at the close of the testimony the court ruled that no fact question was presented by the testimony, and therefore withdrew the case from the jury and rendered a judgment for Eubanks against the railway company for damages for both an accrued and an anticipatory breach of such contract for the total sum of $41,481.20. On appeal by the railway company, this judgment was reversed and the cause remanded for a new trial. Eubanks brings error. The notation made in granting the writ shows that the writ was granted in order to decide the proper measure of damages.

It seems from the record before us that in 1913 the railway company entered into a contract with its employees, which contract covered Eubanks, and which contract provided, among other things, that employees included therein should not be disciplined or discharged without proper cause. The contract set up a method of procedure to be followed by employees in presenting their grievances, and provided the authority to whom such grievances should be presented. The contract provided further that, if it should be found by such authority that an employee of the railway company had been unjustly discharged, he should be reinstated and paid "for all time lost." It is then shown that Eubanks was discharged by the railway company on October 25, 1924, and that he followed the procedure of the contract and presented the matter of his discharge to the authority designated in the contract. This authority decided against him.

It is then shown that in 1922 the railway company and its employees, of which Eubanks is one, entered into a further written contract. In this contract it was agreed that personal grievances of employees under certain circumstances should be submitted to

a board known as "Train Service Board of Adjustment for the Western Region." The 1922 agreement provided that the decision of this board should be final and binding on the parties.

It is then shown that in a proper manner Eubanks presented his grievance; that is the matter of his claimed unjust discharge to the board provided by the 1922 contract, and, after various proceedings, not necessary to detail here, the board, on February 18, 1927, finally adjudged that Eubanks had been wrongfully discharged. The railway company refused to abide the decision of the board by reinstating Eubanks as an employee, or by paying for the time lost. The suit followed.

The trial court concluded that the evidence showed, as a matter of law, that Eubanks would have made $144 per month from October 25, 1924, the date of his discharge, to June 18, 1930, the date of the judgment. Based on this conclusion, he rendered judgment for Eubanks for $144 per month from October 25, 1924, to June 18, 1930.

The trial court further rendered judgment for Eubanks against the railway company for an additional sum of $30,000. This part of the judgment was based on the theory that the railway company had been guilty of an anticipatory breach of the contract with Eubanks for the balance of his natural life. The court found that Eubanks' life expectancy was 29 years, and that he was entitled to pay for such time at $144 per month reduced to its present worth on the date of the judgment.

A calculation brings us to the conclusion that the total judgment rendered against the railway company amounted to $41,481.20.

At this point we pause to note the following additional facts disclosed by this record:

(a) It is shown that during the time between the date of his discharge by the railway company and the date of the judgment Eubanks' personal earnings amounted to a considerable sum.

(b) The record before us clearly presents a question of fact as to what Eubanks would have earned had he not been discharged as an employee of the railway company. In this connection there is evidence that Eubanks was an extra brakeman at the time of his discharge. He had no contract guaranteeing him that he would earn $144 per month or that he would have work all the time. In this connection, the record shows that during slack times the railway company had the right to reduce its train crews, and that men with less seniority would be the first to be laid off. We do not understand that Eubanks even contends that he had such seniority that he would not have been laid off at times.

(c) The contract between the railway company and its employees, on which this suit is based, contains the following express provision: "18. This agreement shall become effective upon its execution and shall remain in full force and effect for a period of one year from the date of organization of the Board and thereafter for successive periods of one year, provided that any party signatory hereto may withdraw at the end of any year upon serving written notice of its intentions to withdraw not less than ninety days prior to the expiration of such year, such notice to be given each of the parties signatory hereto; and provided further, that in the event that any party or parties signatory shall serve notice of intention to withdraw at the end of any year of the other parties hereto shall then have thirty (30) days during which it may serve notice of its intention also to withdraw."

Under the above record, we think the Court of Civil Appeals was correct in reversing and remanding this case for a new trial, both as to the accrued, and the anticipatory breach.

It is clear to us that even if we should concede, which we do not, that Eubanks rested under no obligation to lessen his damages by making a reasonable effort to secure other employment, and further even if we should concede, which we do not, that he should not be charged with money actually earned by him, still the facts in the record before us do not justify a holding that his accrued damages were liquidated or proven as a matter of law. This is evident because, as already shown, the facts do not show affirmatively, that is, in a sum certain, what his earnings would have been between October 24, 1925, and June 18, 1930.

The contract provides that, if the employee is unjustly discharged, he shall have pay "for all time lost." The trial court seems to hold that this provision was intended to set aside the common-law rule as to the measure of damages for breach of this contract and substitute a different measure fixed by the contract itself. The trial court then, seems to hold that the measure fixed by the contract would not charge Eubanks with money actually earned during the time between his discharge and the judgment, and would not obligate him in any way to mitigate his damages by making a reasonable effort to secure other employment. The Court of Civil Appeals holds, in effect, that the provision in the contract requiring the railway company to pay him "for all time lost" means nothing more than to obligate the railway company to pay for the loss of earnings. In other words, we understand the opinion of the Court of Civil Appeals to hold that the common-law rule should be applied in measuring the damages. We approve this holding.

The trial court held, in effect, that Eubanks had a contract with the railway company for employment for the balance of his natural life. Based on such holding, the

trial court allowed Eubanks a recovery as for an anticipatory breach of such contract for a life expectancy of 29 years at $144 per month. This holding was utterly erroneous for the reason, among others, that the clause in the contract above quoted by us demonstrates that Eubanks did not have a contract of employment for the balance of his natural life. The clause quoted expressly provides that either party may withdraw from the contract at the end of any year upon serving written notice of its intentions so to do not less than ninety days prior to the expiration of such year. This clause in the contract precludes any recovery for anticipatory breach for the life expectancy of Eubanks. Dunbar v. Dunbar, 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084; Pollack v. Pollack (Tex. Com. App.) 46 S.W.(2d) 292. If Eubanks had an unconditional contract of employment for his natural life, the time of his expected death could be legally ascertained by reference to mortality tables. Dunbar v. Dunbar, supra; Pollack v. Pollack, supra. However, in the case at bar, we have absolutely no way of knowing how long the contract made the basis of this suit will be kept in operation, except for the current year, and the year following, where the time for notice for withdrawal has expired.

We recommend that the judgment of the Court of Civil Appeals, which reverses the judgment of the district court and remands the cause for a new trial, be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals reversing that of the district court is affirmed, as recommended by the Commission of Appeals.