**DIXIE GLASS CO., Inc., of Houston, Texas, Appellant,**

v.

**Harry H. POLLAK, Appellee.**

No. 13268.

Court of Civil Appeals of Texas.

Houston.

Dec. 1, 1960.

Rehearing Denied Dec. 22, 1960.

Al Schulman, J. Edwin Smith, Houston, for appellant; Dixie & Schulman, Smith & Lehmann, Houston, of counsel.

L. Keith Simmer, M. W. Parse, Jr., Houston, for appellee; Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel.

BELL, Chief Justice.

The appellee was employed by written contract of January 1, 1953 as comptroller of appellant for a period of five years and was given an option to renew the contract for three additional five-year terms, the option to be exercised six months prior to the end of each term. The contract provided for a weekly salary of $200 and an annual bonus of 10% of the net profits before deduction for income taxes. The contract was authorized by the unanimous vote of all officers, directors and stockholders in a joint meeting held January 2, 1953. On October 19, 1955, the appellant discharged appellee.

Appellee sued appellant for breach of this contract, contending his discharge was without good cause, and sought recovery of his damages, alleging them to be the value if paid now of the amounts, salary and bonus, that he would have earned under the contract for the full term, including the terms for which he was given an option, less any amounts that he should be able to earn during said term from other employment or business which he should be able to obtain by the exercise of reasonable diligence.

Trial was to a jury, which found the discharge was without good cause. The jury found the damages up to the time of trial to be $20,277. It also found appellee would earn $156,000 as salary under the contract up to its termination from the time of trial. It allowed no bonus after the time of trial. It also found appellee's earnings in the future, above all necessary expenses, should be $78,000. The court rendered judgment for appellee for $3,116.24, which was the bonus stipulated to be due appellee as of the date of his discharge on October 19, 1955, together with interest from February 1, 1956, and for $98,277, the amount found by the jury, together with interest from the date of judgment. Execution was stayed as to the $78,000 found to be appellee's damages from the date of trial to the end of the contract.

The record in this case is most voluminous, the statement of facts consisting of 1,200 pages and the transcript being 157 pages long. We feel, however, after reading the entire record, that a relatively brief general summary of the evidence will suffice for purposes of disposing of the questions presented on appeal.

The business carried on by appellant was founded by Mr. Abe Zax, now deceased. Mr. Zax died intestate in 1949. Laura Zax, his widow, took her one-half of the community estate and Mr. Zax's one-half interest passed to his daughter, Phyllis Holland, wife of Leonard Holland, and his son, Robert Zax. Mr. Holland began working for the company prior to Mr. Zax's death. In 1951 the company was incorporated. Mrs. Laura Zax, who in 1952 married appellee, Harry H. Pollak, owned 50% of the corporate stock, Phyllis Holland owned 25% and Robert Zax owned 25%. Mrs. Zax was president of the appellant until October, 1955. We think the evidence fairly well establishes that she worked some in the business but was not too active. Mr. Holland was the most active of any member of the family in the business before appellee became connected with it. While Mr. Holland was of course interested in the whole operation, he primarily handled the sales end. Prior to January 1, 1953, when the contract, which is the subject matter of this suit, was entered into with Harry H. Pollak, a Mr. Kennard was employed to handle the office work. It is undisputed that Mrs. Pollak was receiving $100 per week salary and some allowances in addition, and this was unsatisfactory to Mr. Holland who felt she was making no real contribution to the business. There is evidence of friction between Mr. Holland and the Zax family even before Mr. Pollak came into the picture. In any event, Mr. Holland admits he felt it would be good to bring Mr. Pollak into the business. He denies the contract was his idea, and in fact says it was Mr. Pollak's idea. The contract, dated January 1, 1953, was signed by the officers of the corporation and the owners of all of the stock

of the corporation. At a joint meeting of the directors of the corporation and the holders of all of the stock of the corporation on January 2, 1953, the contract with Mr. Pollak was approved unanimously by the directors and stockholders and he was employed as comptroller. Mr. Holland was employed, apparently, as vice president in charge of sales, for a period of one year, with the same compensation as provided for Mr. Pollak.

After the execution of the contract Mr. Pollak entered upon the performance of his duties, they being the handling of all office matters. Mrs. Pollak was president of the company, though relatively inactive.

In October, 1951, Mrs. Pollak sold 25% of the company stock to Leonard Holland, so thereafter she owned only 25% of the stock.

From time to time after appellee became connected with the business there was disagreement between him and Mr. Holland. The record is replete with charges made by Mr. Holland concerning the way in which appellee carried out his duties, while appellee testifies similarly as against Mr. Holland. It is unnecessary for us to at this point notice the charges specifically. Nothing was apparently done until at a meeting of the Board of Directors on July 19, 1954, a resolution was passed appointing Mr. Holland as the Board representative to negotiate with appellee "with regard to the present unsatisfactory conditions existing between Mr. Pollak and the Corporation." The results of the negotiations were to be reported to the Board.

At a special meeting of the directors called for August 27, 1954, Mr. Holland made his report. The substance of the report was that appellee did not work full time; that he harassed the actual operations of the business and had damaged the company in the eyes of its employees, customers and friends. The resolution found these things to be true. Mr. Pollak was to be advised by letter that he had no contract but if he contended he did it was termi-

nated. Mr. Holland was appointed general manager with supervision over all employees including appellee. Pollak was to continue as an employee at the same pay as then existed, and various specified duties were assigned to him.

At this same meeting it was decided that all car allowances, travel expense, or entertainment expense must be approved by Holland and a member of the Board of Directors.

A copy of the above resolution was sent to Mr. Pollak.

After this, on about September 3, appellee and Holland were in Mr. Hessel's office (he being the attorney for the company). Appellee testified Holland stated he couldn't get along without appellee. Hessel at this time told appellee, Holland being present, the above letter had nothing to do with the contract of employment.

Friction between Holland and appellee continued until the discharge of appellee. Whose fault it was is the subject of great debate in the evidence. Appellant contended appellee did not perform the duties imposed on him by the contract. The jury found, as hereinafter stated, that appellee did perform the duties within the scope of his employment as a person of ordinary prudence in the industry would have performed them under the same or similar circumstances.

Appellant contended the contract was invalid because for a term longer than authorized by its by-laws. It plead waiver and estoppel by appellee of any rights he might have had by reason of his conduct after purported termination of the contract on August 24, 1955. The jury, on sufficient evidence, found to the contrary.

Too, appellant plead that appellee was discharged for good cause because he tried to pay his own legal fees with corporate funds. This will later be discussed. Appellant says appellee fraudulently concealed from it that he had had tax difficulties and had taken bankruptcy. It suffices to note that the tax difficulties under the evidence showed no improper conduct. If a duty existed for appellee to disclose that he had taken bankruptcy, it is sufficient to say such fact was known to Mrs. Pollak, the then president of appellant, and Mr. Stern, then a director. This was notice to appellant.

At the outset we must decide whether the contract employing appellee as comptroller for a term of five years and giving him the option to extend the contract for three five-year terms is a valid one.

The position of appellant is that its by-laws limited the term for its officers to one year. In this connection it says the appellee neither pled nor proved there was not this limitation in its by-laws. Appellant relies on the case of Pioneer Specialties, Inc. v. Nelson, recently decided by our Supreme Court, 339 S.W.2d 199. Our opinion in that case is reported in Nelson v. Pioneer Specialties, Inc., 325 S.W.2d 924. The Supreme Court held that the Board of Directors could not employ Nelson as president for more than one year because the by-laws fixed the president's term of office at one year. However that Court recognized that the Legislature of Texas, by the passage of Article 1327, Vernon's Ann. Tex. St., in 1951, and Article 2.02 of the Texas Business Corporation Act, V.A.T.S., in 1955, had changed the public policy of Texas which had theretofore prevented the employment of corporate officers for more than one year, so that after the passage of these statutes the corporation had the authority to determine the term of an officer. The corporation might through by-law restrict the authority of the board of directors as to the term for which it might employ an officer. In our opinion, in that case, we held the same with regard to the change in policy and construed the particular corporate by-law as not restricting the board of directors in making long term contracts of employment. In this latter respect the Supreme Court held we were in error and held the by-law did fix an officer's term at one year. Appellant says its by-law is the equivalent of the one involved in that case.

Too, appellant says its by-laws give the Board authority to remove an officer at any time.

The position of appellee is that the by-law does not apply to the employment of him as comptroller because a comptroller is not a corporate officer. Too, he takes the position that even if the comptroller is an officer, the by-laws are ineffective in this case because the contract was authorized and executed by all directors, all officers and all of the stockholders, the authorization resulting from a joint meeting of all of the directors and all of the stockholders. He says the by-laws provide that they may be changed, amended or altered either by a majority of the Board of Directors or a vote of a majority of the stock by the stockholders, and the effect of this unanimous action of all the directors and all stockholders was to make the by-law ineffective as to this contract.

■ We are of the view that the by-law of appellant is the legal equivalent of the one involved in Nelson v. Pioneer Specialties, Inc. However, we find it unnecessary to determine whether a comptroller is an officer included within it because we are of the view that the contract is valid since it was authorized by the unanimous vote of all directors and all stockholders in a joint directors and stockholders meeting and was executed by all corporate officers, all directors and stockholders.

The by-law of appellant with regard to alteration or repeal of a by-law reads as follows:

"Section XVIII.

"Alteration of By-Laws

"All by-laws of the company shall be subject to alteration or repeal, and new by-laws may be made, either by the affirmative vote of the holders of record of a majority of the outstanding stock of the company entitled to vote in respect thereof, given at any annual meeting or at any special meeting, pro-vided notice of the proposed alteration or repeal or of the proposed new by-laws be included in the notice of such meeting, or by the affirmative vote of a majority of the whole Board of Directors given at a special meeting of the Board of Directors called for the purpose, provided notice of the proposed alteration or repeal or of the proposed new by-laws be included in the notice of such meeting. By-laws made or altered by the stockholders or by the Board of Directors shall be subject to alteration or repeal by the stockholders or by the Board of Directors."

Before the decision of the Supreme Court in Nelson v. Pioneer Specialties, Inc., supra, because of statute, the contract here involved would have been invalid because in violation of public policy. Since the decision in that case public policy allows long term employment contracts if not prohibited by the corporation. While a by-law of appellant, which was the creature of the corporation through its stockholders, fixed terms of office at one year, that by-law by way of statute may be altered, amended or repealed by the stockholders or, if authorized by the by-laws, by the Board of Directors. Articles 2.02 and 2.23, Texas Business Corporation Act, V.A.T.S. The above quoted by-law of appellant vests in the Board of Directors the authority to change or alter a by-law as well as affirming such authority in the stockholders. If the stockholders and directors can change or amend a by-law they may waive its application in a given case.

In the case of Realty Acceptance Corporation v. Montgomery, 3 Cir., 51 F.2d 636, 639, the United States Circuit Court of Appeals upheld a contract of employment for five years for the president of a corporation. There it appeared Montgomery was employed as president of Realty Acceptance Corporation and the Stuyvesant Corporation. Realty Acceptance owned all of the stock in Stuyvesant. It was urged, among other things, that the by-laws of each corporation provided the president

should be chosen annually and that he could be removed with or without cause. Montgomery did not deny such by-laws, but took the position there was no statutory prohibition against employment of officers for a fixed term and that since a majority of the directors could amend the by-laws, their act in authorizing the contract was a pro tanto supersession of them and would prevail over them.

The court, in upholding the contract, said:

"To read into a contract of employment for a definite period, expressly authorized by the board of directors, a by-law amendable by a majority of the board, and thus nullify the contract, would sacrifice substance and straightforwardness for form and procedure. Defendant's further contention that, if the contract be upheld at the expense of the by-law, boards of directors may by contract of employment for terms of years perpetuate their business policy and deprive succeeding boards of the power to afford relief, is not convincing. It sticks in the bark, for the evil possibilities suggested have their true foundation, not in the supremacy of contract over by-law, but in the futility of a limitation which rests solely upon a by-law amendable by a majority of the board. Were there doubt of the board's power to amend by necessary implication through solemnly authorized, inconsistent acts, the limitation would constitute no barrier to the commission of the suggested acts by a board so disposed, for the board could formally and expressly repeal the by-law containing the limitation and thereupon with all regularity authorize the contracts for terms of years.

"I am of the opinion and find that the contract made by the defendant pursuant to the express authority of its board of directors, which had express power to amend at will the by-laws of

the defendant, modified, in its legal effect, all inconsistent by-laws and prevails over them."

See also Hill v. American Co-Operative Ass'n, 195 La. 590, 197 So. 241; Community Stores, Inc. v. Dean, 1 Terry, Del., 566, 14 A.2d 633; Fletcher on Corporations, Permanent Ed., Sec. 4200.

In this case under the by-laws of appellant a majority of the members of the full board have authority to alter or change a by-law. This being true, it would seem obvious to us that when the directors unanimously authorized this contract, they suspended any inconsistent by-law to the extent of such contract, or, expressed otherwise, they waived the by-law. It is noted that the by-law authorizing the Board of Directors to alter or change a by-law provides that the notice of the meeting called for that purpose shall state the purpose of the call. The meeting at which this contract was authorized was the annual meeting of the stockholders and directors held January 2, 1953. We find no notice of the meeting, but we find a waiver of notice signed by all directors except Harold Stern, a director, and Robert Zax, a stockholder. Mr. Stern, the minutes reflect, was not present as he that day tendered his resignation. Too, the minutes reflect that Robert Zax was personally present, as were all other stockholders and directors. The minutes also reflect that at said joint meeting the employment of appellee was unanimously approved. We think this effective to waive the by-law fixing the term of office at one year and the by-law giving right of removal to the Board of Directors insofar as this contract is concerned.

We have been cited to no Texas cases discussing the above principle and have found none.

In addition to the action of the Board of Directors as above stated, we have the additional fact that the contract was authorized at the annual stockholders meeting by

the unanimous vote of all stockholders and the contract was executed by all stockholders.

While we have found no Texas case involving this precise situation, there are two Texas cases holding that though in a given situation a Board of Directors might not have authority to convey corporate assets, a conveyance of those assets was valid where authorized by the unanimous approval of the stockholders. Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949; Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S.W. 627.

While appellee did not plead that there was no prohibitory by-law, he pled the contract and pled its approval and authorization by all directors, officers and stockholders. This is sufficient to allege a valid contract and the allegations are fully supported by the proof.

It is further the position of appellant that even if the contract is valid, appellee could not recover damages alleged to have accrued in the future beyond the date of trial. The trial court submitted damage issues in a manner so as to separate damages up to the time of trial from damages beyond the date of trial. Appellant takes the position there can be no recovery beyond the date of the trial because it cannot be known with reasonable certainty whether the appellee will be damaged and if so how much. Appellant asserts this to be the holding of all Texas cases.

Appellee takes the position that there has been no such holding in Texas, but that language stating this to be the rule is but dictum. Too, he asserts that the effect of the case of Pollack v. Pollack, Tex.Com. App., 39 S.W.2d 853, is to allow damages beyond the date of trial.

We find there is a conflict in the authorities in the United States. The majority rule is that recovery of damages may be had for the full term, regardless of when the trial occurs. The minority view is that anticipatory damages may not be recovered but recovery is limited to damages suffered to the date of trial. 6 Tex.Law Review 394; 35 Amer.Jur., § 56, p. 489; 56 C.J.S. Master and Servant § 58, pp. 471–472; McCormick on Damages, § 161, pp. 631–632; 6 L.R.A.,N.S., pp. 111–116; Williston on Contracts, Revised Edition, Vol. 5, § 1362; 1 Labatt on Master and Servant, § 363; 14 Minn.Law Review 822.

We are of the view there is no Texas case authoritatively deciding the question. The following Texas cases have contained a statement that for breach of an employment contract damages may not be recovered beyond the date of trial: Lichtenstein v. Brooks, 75 Tex. 196, 12 S.W. 975; Mudgett v. Texas Tobacco Growing & Mfg. Co., Tex.Civ.App., 61 S.W. 149; Louisiana Rio Grande Canal Co. v. Quinn, Tex. Civ.App., 161 S.W. 375; Southern Properties v. Carpenter, Tex.Civ.App., 300 S.W. 963; Weber Gas & Gasoline Engine Company v. Bradford, 34 Tex.Civ.App. 543, 79 S.W. 46; Niles v. Parsons, Tex.Civ.App., 239 S.W.2d 740; Golden Rod Mills v. Green, Tex.Civ.App., 230 S.W. 1089, error dism.; Pacific Express v. Walters, 42 Tex. Civ.App. 355, 93 S.W. 496, error ref.

We will not discuss each case, but a very thorough study of them convinces us that the statement as to the limitation of recovery to the date of trial was, for one reason or another, unnecessary to a decision of the particular case and therefore dictum.

In the case of Galveston, H. & S. A. Ry. Co. v. Eubanks, 42 S.W.2d 475, the Court of Civil Appeals did, basing its decision on the dictum in some of the above cases, hold that recovery of damages was limited to those shown to have accrued to the date of trial. However, the Commission of Appeals in an opinion reported in 59 S.W.2d 825, 826, affirmed the Court of Civil Appeals in reversing the trial court because the trial court had adopted the wrong measure for determining damages up to the date of trial and because damages beyond the date of trial were allowed when

**538**

there was no contract for any definite term as either party to the contract could withdraw from it at the option of either upon proper notice. It is, we think, significant, however, that the Commission of Appeals said the following, even though it is dictum:

"If Eubanks had an unconditional contract of employment for his natural life, the time of his expected death could be legally ascertained by reference to mortality tables. Dunbar v. Dunbar, supra [190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084]; Pollack v. Pollack, supra. However, in the case at bar, we have absolutely no way of knowing how long the contract made the basis of this suit will be kept in operation, except for the current year, and the year following, where the time for notice for withdrawal has expired."

The only Texas case that has really discussed the reason for this limitation is Southern Properties v. Carpenter, supra. The court there said Texas did not recognize the doctrine of constructive service; that immediately on breach by the employer a cause of action for damages arose but the duty rested on the employee to seek to minimize his damages by procuring other employment, and, in recognition of this duty, the Texas courts had held damages were limited to the date of trial since it could not be known beyond that date whether employment could be obtained, and if so what the employee's compensation would be. As we previously noted, the observation with regard to this limitation was unnecessary to the decision of the case. We note the case particularly because it is the only case that fully states the reason for the minority rule.

There are statements in other Texas cases that by dictum seem not to limit recovery to the date of trial. Kramer v. Wolf Cigar Stores Co., 99 Tex. 597, 91 S.W. 775; East Line & R. R. R. Co. v. Scott, 72 Tex. 70, 10 S.W. 99; Matlock v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 70 S.W.2d 279, error dism.; G. A. Kelly Plow Co. v. London, 59 Tex.Civ.App. 208, 125 S.W. 974.

We do not deem the case of Pollack v. Pollack, supra, controlling as it involved an annuity contract and not one of employment. Under the annuity contract there was an absolute obligation to pay plaintiff $5,000 for life, with plaintiff's obligation being wholly executed.

In the light of the dictum contained in the many Texas cases, we have given most mature consideration to this question. It is with reluctance that we go contrary to the language used in many cases throughout the years, even though such be dictum. However, being convinced that the question has not been authoritatively decided in Texas and being convinced that better reasoning supports the majority rule, we feel compelled to follow it.

We, therefore, hold that where an employer wrongfully breaches a contract of employment prior to the time it has been completely performed, a cause of action for damages for breach of contract immediately arises in favor of the employee and he is entitled, if he elects, to recover his damages for the full term for which he was employed and he is not limited to damages proven only to the date of trial where trial is before the expiration of the term of employment.

Of course his suit is not for wages but is for damages. The measure of damages is the present cash value of the contract to him, if it had not been breached, less any amounts that he should in the exercise of reasonable diligence be able to earn through other employment. The duty is on the employee to use reasonable diligence to obtain other employment and thus minimize his damage. The maximum recovery would be the present value of the contract if it should be fully performed and in the exercise of reasonable diligence the employee could not obtain other employment.

In the case of Pierce v. Tennessee Coal, Iron and Railroad Co., 173 U.S. 1, 19 S.Ct. 335, 341, 43 L.Ed. 591, there was a lifetime employment contract given an injured employee. This was breached by the employer and suit was for damages for the full term. The trial court allowed damages only to the date of trial. The Supreme Court reversed, holding that upon breach a cause of action for breach of contract arose immediately and damages were recoverable for the whole term. The Court said:

"If these facts were proved to the satisfaction of the jury, the case would stand thus: The defendant committed an absolute breach of the contract at a time when the plaintiff was entitled to require performance. The plaintiff was not bound to wait to see if the defendant would change its decision and take him back into its service, or to resort to successive actions for damages from time to time, or to leave the whole of his damages to be recovered by his personal representative after his death. But he had the right to elect to treat the contract as absolutely and finally broken by the defendant; to maintain this action, once for all, as for a total breach of the entire contract; and to recover all that he would have received in the future, as well as in the past, if the contract had been kept. In so doing, he would simply recover the value of the contract to him at the time of the breach, including all the damages, past or future, resulting from the total breach of the contract. The difficulty and uncertainty of estimating damages that the plaintiff may suffer in the future is no greater in this action of contract than they would have been if he had sued the defendant, in an action of tort, to recover damages for the personal injuries sustained in its service, instead of settling and releasing those damages by the contract now sued on.

"In assessing the plaintiff's damages, deduction should, of course, be made of any sum that the plaintiff might have earned in the past or might earn in the future, as well as the amount of any loss that the defendant had sustained by the loss of the plaintiff's services without the defendant's fault."

In the case of Granow v. Adler, 24 Ariz. 53, 206 P. 590, 592, the Supreme Court of Arizona held damages recoverable for the full term of the contract though trial occurred prior to the end of the term. The Court said:

"We think the authorities which hold that in such an action the employee is entitled to recover all damages he has sustained by the breach of the contract, estimated to the end of the contract period, are founded upon the better reason and announce the more just and equitable rule. To limit recovery to the damages accrued to the term of trial, the contractual term not having elapsed, and then to hold the employee barred by such an award from any further recovery, seems to us to be at war with the general principle which imposes liability upon the party who breaches a contract, to respond to the other party for all damages which arise naturally from the breach, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract, as a probable result of the breach. If the employee would have all his damages assessed and thereby realize the fruits of his contract, he is, under these authorities, offered the alternative of deferring the bringing of his suit or the trial of the cause until after the expiration of the term of employment. In many cases—more especially in the event of a long term contract—the acceptance of this alternative might deprive the employee of all redress for his injury. The uncertainty involved in the computation of the damages to accrue after trial is not introduced by the act of the

employee, but arises from the fault and wrong of the employer, and it appears to us constitutes no just reason for depriving the employee of his right to recover all the damages he has sustained, if he makes the best proof of which the case is susceptible."

The Court cites many authorities from various states supporting the holding. See also Cutter v. Gillette, 163 Mass. 95, 39 N.E. 1010; Webb v. Depew, 152 Mich. 698, 116 N.W. 560. These are representative cases. See also McCormick on Damages, § 161, and Williston on Contracts, Vol. 5, § 1362.

The Texas cases hold that on breach of the contract, only one cause of action for damages for breach of contract arises. The employee may not split his cause of action. If, as in many cases he has, an employee sues for damages for less than the full contract period, he waives the balance of his damages. Lichtenstein v. Brooks, supra; Southern Properties v. Carpenter, supra. Too, the cause of action arises immediately on breach so that the statute of limitation commences to run so that at least as to damages that have accrued beyond the particular period of limitation before the filing of suit, recovery is barred. Pollack v. Pollack, supra; Matlock v. Gulf, C. & S. F. Ry. Co., supra.

The result of adopting the minority rule would certainly in the case of a long term contract effectively deprive an employee of the fruits of his contract. He must sue within the period of limitation or lose the part of his damages barred by limitation. If he sues within the period of limitation and is required by the trial court to try the case before the end of the term, he must lose a part of his damages. Even if he is allowed to wait until the end of the term before going to trial he loses in the interim the enjoyment of the fruits of a valid contract that he has been willing to perform but which the employer has wrongfully breached.

We see no more uncertainty in allowing recovery of anticipatory damages in a breach of employment contract case than there is in the case of allowing recovery for diminished earning capacity in a personal injury case. Yet every day all courts, with no question raised, allow recovery in personal injury cases. In determining such damages in a personal injury case, the jury must, on a basis of probability as shown by the evidence, predict whether his earning capacity has been impaired. In many such cases there will be no question under the evidence that it has been impaired. Under the evidence of some cases it may be questionable whether it has been impaired. Under the evidence in some cases it will be improbable that there has been impairment, in which case damages could not be allowed. However, the fact that in some particular cases it may be doubtful or uncertain as to whether there has been impairment of earning capacity does not preclude recovery in those cases where the evidence shows probable impairment. In breach of employment contract cases, there may be cases where it is improbable under the evidence that any damage will result to the employee, in which case damages cannot be allowed. There will, however, be such cases, as is here before us, in which probably the employee, on a basis of the evidence, has and will suffer loss during the term. In such case the employee should recover. In a personal injury case a jury must predict on a basis of the evidence the probable extent of the impairment of earning capacity. To do this it must determine whether in probability under the evidence the impairment is partial or whole. If partial, it must predict how greatly this will interfere with obtaining work and how much less remunerative such work will be. Too, a jury must determine the duration of the impairment. If it is permanent, the jury must predict the life expectancy of the injured party. The fact that these factors are inexact of determination does not prevent an award of damages.

In a breach of employment case, we see a distinct parallel. Some cases will be such that factually in the light of the evidence we cannot predict that probably damage will result. However, in other cases we can say that probably the employee is damaged. Then we determine on a basis of probability, in the light of the evidence of a given case, the extent of that damage. Many factors, just as in a personal injury case, will have to be considered. Some factors are: age, probable life expectancy, education, experience, past earning capacity, and probable span of employability.

In the case before us there can be little doubt that appellee suffered and will suffer damage. He was at the time of the breach of the contract 58 years of age and he had a contract paying him $10,400 per year. Can there be any reasonable doubt that in the light of human experience appellee will in probability not be able to get any such remunerative employment during the balance of his life? It is a matter of common knowledge that a person of this age cannot well compete in the labor mart. Of course, it cannot be determined with mathematical exactness what his earnings will be. Mathematical exactness is not required. The evidence shows that between discharge and trial, a period of some two years, appellee had tried diligently to obtain work and had obtained some work which paid very little. We mention the facts of this case to demonstrate that in some cases of breach of employment contracts the evidence will show, with probability, resulting damage and the extent of damage. This demonstrates that minority rule, which says that since it is a breach of employment contract you cannot recover anticipatory damages because they are too uncertain, is not sound. The majority rule, that you can recover such anticipatory damages as the evidence in a particular case shows probably will result, is sound.

■ The contract here was for a term of five years. It provided that appellee could, at his option, renew the contract for three additional five-year terms by exercising his option six months before the termination of each five year period. Appellant says that at most appellee could recover for damages for the first five-year term because he had never exercised the options contained in the contract.

We overrule this contention. A substantial provision of the contract breached by appellant was the option of appellee to extend it. When the contract was breached time had not arrived for the exercise of the option. When appellant repudiated the contract, he deprived appellee of this contract right. Too, since appellant had repudiated the contract and discharged appellee, it would be useless for appellee to exercise the option. The law does not require a useless act. We think the fact there were options in the contract in favor of appellee is one element to be considered by the jury in determining damages, that is, the jury could consider the probability of the exercise of the options in determining the length of the term. Detroit Graphite Co. v. Hoover, 1 Cir., 41 F.2d 490.

■ Appellant contends the court in the submission of Special Issue No. 1 erroneously submitted a question of law. It contends what is good cause for discharge is a question of law for the court. Special Issue No. 1 reads as follows:

"Do you find from a preponderance of the evidence that Plaintiff, Harry H. Pollak, was discharged by defendant on October 19, 1955, without good cause, as hereinafter defined?

\* \* \* \* \* \*

"An employer may not discharge his employee during the period of employment agreed on except for good cause.

"You are instructed by the court that by the term 'good cause' for discharge, as used in this charge, is meant a failure of the employee to perform those duties in the scope of his employment as a man of ordinary prudence in an in-

dustry would have done under the same or similar circumstances."

We are of the view that the above issue, when considered with the accompanying instruction, did not submit a question of law. It really submitted to the jury the issue of fact as to whether the employee substantially performed the duties imposed upon him by his contract. If there was substantial performance of his contract, then there was no good cause for discharge by reason of failure to perform the contract. This issue but determined the controversy between the parties as to whether appellee had carried out his duties as imposed by the contract. It might have been better practice to submit the issue directly inquiring as to whether there was substantial performance, accompanied by a definition as to what constitutes substantial performance. However, the issue is not subject to the objection levied at it that it submitted a question of law. See Jay-Kay Paint Mfg. Co. v. Carter, Tex.Civ.App., 281 S.W.2d 453, writ ref., n. r. e.

Appellant further contends, as we understand it, that the jury in answer to Special Issues 6, 7, 8 and 9, found facts which constituted good cause for discharge and though the jury answered Special Issues Nos. 1 and 14 that there was no good cause for discharge, the court should have disregarded the jury's answers to Issues 1 and 14 and rendered judgment for appellant. Expressed otherwise, appellant says what is good cause is a question of law; the jury merely determines whether certain facts exist and the court then determines whether in law those facts constitute good cause for discharge.

In answer to Special Issue No. 6 the jury found that appellee failed to work in cooperation with Leonard Holland at and immediately before October 19, 1955. In answer to Special Issue No. 7 the jury answered such failure was due "in whole or in part" to unreasonable action on appellant's part. In answer to Special Issue No. 8 the jury answered that appellee tried to use monies of appellant to pay his own legal fees. In answer to Special Issue No. 9 the jury answered that appellee's conduct in connection with A. B. C. Glazing Co. and Storecrafters, in the absence of Leonard Holland, constituted neglect, incompetence or mismanagement. In answer to Special Issue No. 14 the jury found that none of the facts, nor any combination of them, as found by these issues, constituted good cause for discharge. In connection with Special Issue No. 14 the court defined "good cause" as follows:

"You are instructed by the Court that by the term 'good cause' for discharge, as used in this charge, is meant a failure of the employee to perform those duties in the scope of his employment as a man of ordinary prudence in an industry would have done under the same or similar circumstances."

The appellant objected to this definition on the ground, among others, that it encompassed only nonfeasance and did not include acts of misfeasance on which appellant was relying and which were inquired about in the issues relating to the payment of attorneys' fees and the handling of the A. B. C. Glazing Company and Storecrafters' accounts.

Appellee seems to take the position that the only issue was whether appellee had substantially performed his contract. Appellant contends the court should have determined as a matter of law that these acts constituted good cause.

We do not wholly agree with either appellant or appellee.

It is true that many cases state the rule broadly to be that whether an act occurred is, if the evidence is conflicting, a question of fact for the jury, and, if the jury finds it did occur, the question of whether it constitutes good cause for discharge is a question of law for the court to decide. However, while the rule is thus broadly stated, we think no more was intended than that

under the facts of the particular case, the acts of the employee were such, as a matter of law, as to be good cause for discharge. These cases, for the most part, were cases of violation of reasonable and substantial rules governing the employee in performance of his work, or aggravated cases of refusal to obey reasonable orders of the employer that amounted to insubordination, or, cases of clearly dishonest acts toward the employer on the part of the employee in the attempted performance of the employee's work, or acts such as an unprovoked fight by an employee with an officer of the employer in the presence of other employees. Royal Oak Stave Company v. Groce, Tex.Civ.App., 113 S.W.2d 315, writ dism.; Robertson v. Panhandle, S. F. Ry. Co., Tex.Civ.App., 77 S.W.2d 1078, writ dism.; Matlock v. Gulf, C. & S. F. R. Co., Tex.Civ.App., 99 S.W.2d 1056, writ dism.; Swilley v. Galveston, H. & S. A. Ry. Co., Tex.Civ.App., 96 S.W.2d 105, writ dism.; Shute & Limont v. McVitie, Tex.Civ.App., 72 S.W. 433.

It seems but reasonable to us, however, that there are incidents that will arise during the existence of the employer-employee relationship that may amount to slight violations of the relationship, or the violation may be of such a nature that reasonable minds would differ over whether it is so inconsistent with the relation of employer-employee as to be good cause for discharge. An employee cannot be an insurer so as to give meticulous performance. An employee is entitled to protection from the whims of an employer. It seems to us the test should be whether the act is so inconsistent with the employer-employee relation as to be good cause for discharge. G. A. Kelly Plow Co. v. London, Tex.Civ. App., 125 S.W. 974; Schumaker v. Heinemann, 99 Wis. 251, 74 N.W. 785; Dallas Hotel Co. v. Lackey, Tex.Civ.App., 203 S.W.2d 557, ref., n. r. e.; American Annotated Cases 1916A, pp. 1035–1042.

■ We are of the view that Issues Nos. 6 and 7 inquiring if appellee failed to

work in cooperation with Leonard Holland and whether such failure was due "in whole or in part" to unreasonable action of appellee, are but evidentiary of whether appellee substantially performed his contract. The affirmative answers of the jury may therefore be disregarded.

■ We feel that whether appellee tried to use monies of appellant to pay his own legal fees was an ultimate issue. However, we are of the view that under the circumstances of this case it was a jury question as to whether this act, under all circumstances was so inconsistent with the employer-employee relation as to constitute good cause for discharge. The facts on this issue show that appellee originally went to the law firm of Fulbright, Crooker, Freeman, Bates & Jaworski to see about representing the corporation against Leonard Holland, to prevent his interfering in corporate affairs to the injury of the corporation. There were reasonable grounds to think this action proper. Appellee did not hide his action from other corporate officers. He asked Leonard Holland to countersign the $1,000 check in payment of a retainer fee. When this was refused, he countersigned another check in his possession that had been signed by another person authorized. Having such check in his possession was but in line with an approved though loose practice of the corporate officers. Too, he had the statement for the retainer mailed to the corporation at its place of business. Also of great significance was the fact that at that time the corporation owed him far more than the amount of the check. Too, the practice at that time was for the officers, including appellee, to pay personal accounts with corporate checks and having the amounts charged on the corporate books against such officer. The act was not one of attempted embezzlement as appellant urges.

■ The jury answered that the handling by appellee of the A. B. C. Glazing Company and Storecrafters' accounts constituted neglect, incompetence and misman-

agement. Appellant urges this caused the loss of the two most important accounts, the Storecrafters' account running a monthly gross of from $7,000 to $8,000, and the A. B. C. Glazing account running a monthly gross of from $3,000 to $4,000, and constituted good cause for discharge as a matter of law. Appellee urges that this is but an evidentiary issue.

We are of the view it was an ultimate issue and that under all facts and circumstances of this case as to whether it was good cause for discharge was a jury issue.

As we read the voluminous record, the action by appellee in trying to collect these accounts was not within the scope of the duties imposed by his contract of employment. His efforts to collect were made necessary by the absence of Mr. Holland who was admittedly having periods of mental disturbances. His absence left almost full responsibility to keep the business running on appellee. He assumed responsibilities not required by his employment as comptroller. Too, as we read the record, there was a dispute in the evidence as to the value of these accounts to appellant. It would seem to us that under all facts and circumstances it was for a jury to say whether this conduct was so inconsistent with the employer-employee relation as to constitute good cause for discharge. G. A. Kelly Plow Co. v. London, supra.

 We are, however, of the view that the definition given in connection with these issues was erroneous. It was objected to on the ground, among others, that it incorrectly submitted a definition applicable to nonfeasance, while the acts involved in the pertinent issues amounted to misfeasance. The court should have asked the jury whether the issues answered affirmatively showed acts by appellee so inconsistent with the employer-employee relation as to be good cause for discharge. G. A. Kelly Plow Co. v. London, supra. For this error the case must be reversed and remanded.

 We find no conflict between the answer to Special Issue No. 7 and other issues. Issue No. 7 was purely evidentiary.

 There was no error in refusing to submit an issue on whether the minds of the parties met on what were the duties of a comptroller. We think all of the evidence shows that the parties were in agreement as to what the duties were and appellee, with the concurrence of appellant's representative, entered upon performance of those duties.

In view of another trial it should be noted that on retrial the trial court should discount any future amounts recovered as salary to their present worth. Here the jury found appellee would have earned under his contract $156,000 and could earn from other employment $78,000. Judgment was given for $78,000. This should have been discounted to its present worth, based on the unexpired term of the contract at the date of judgment, at the rate of 6% per annum. Pollack v. Pollack, supra.

We have considered all Points of Error whether discussed or not, and all Points not specifically discussed are overruled.

For the error in the court's definition as applied to Special Issues Nos. 8 and 9, the case is reversed and remanded.

WERLEIN, J., not sitting.