R. A. BOUTTE, Appellant,

v.

BEAUMONT CITY LINES, INC.,
Appellee.

No. 7057.

Court of Civil Appeals of Texas,
Beaumont.

Jan. 29, 1970.

Rehearing Denied Feb. 19, 1970.

Ernest L. Sample, Beaumont, for appellant.

Strong, Pipkin, Nelson, Parker & Powers, Beaumont, for appellee.

PARKER, Chief Justice.

Boutte, a bus driver employed by Beaumont City Lines, Inc. (hereinafter called "Company"), sued his employer and Division No. 1031 of the Amalgamated Association of Street, Electric Railway, and Motor Coach Employees of America (hereinafter called "Union") for damages arising out of his alleged wrongful discharge by Company. It was alleged that he was an 18-year employee of Company covered under the terms of a collective bargaining agreement in existence between his Union and Company. His discharge, he alleged, was in violation of the terms of this contract; and, upon demand, Union arbitrarily and in bad faith failed to process his grievance to arbitration as provided therein. He sought judgment against Union and Company, jointly and severally, for his damages. Judgment was entered against the Union nihil dicit and the cause went to the jury as to the issues between Company and Boutte. The court set aside two findings of the jury favorable to Boutte and entered judgment for his damages against the Union, but not the Company, and this appeal follows.

Although the case was hotly contested, sometimes acrimoniously so, there is no legitimate dispute over the fact that a collective bargaining agreement was in existence between Union and Company which provided a procedure for settlement of disputes between the employees and the Company. A grievance was defined[1] and the next section provided that it should be placed in writing and presented within a specified limited time. Next, it was provided that the grievance would be taken up by the Union's Grievance Committee with designated officials of the Company, also within a limited period. Then follows this from Article 6, Section 2, Second:

"* * * Within ten (10) days thereafter such grievance shall be settled or arbitration shall have been demanded as hereinafter provided. *If not so settled, and if arbitration shall not have been so demanded by either party, such grievance shall be forever barred and extinguished.*" (Emphasis supplied.)

Boutte presented his grievance in writing and the Committee did discuss it with Company officials, but were unable to "settle" the dispute. Thereafter, the Union membership, by a vote of 20 to 11, declined to demand arbitration; thus, the remaining steps in the arbitration procedure prescribed in succeeding sections of the contract were never reached. Since the Union has not appealed, we do not discuss the pleadings of Boutte as to the Union except to note that he did allege that both defendants "failed in their contractual duty to arbitrate a grievance for the plaintiff, and ignored his grievance, and have thereby made the grievance procedure ineffective and valueless" to plaintiff. We pause to note that the Company was under no obligation to arbitrate until the Union demanded such procedure, and Union never made such demand.

However, plaintiff did allege that Company Manager Leffard and Union President Price "conspired between themselves to deprive this Plaintiff of his employment rights, by failing and refusing to arbitrate his grievance, * * * all of which conduct was wrongful, and in exact contradiction to the express provisions of said labor contract." The jury, in answer to Special Issue No. 3 found that Leffard and Price did in fact conspire "to prevent the plaintiff from being able to get his case to arbitration." This finding was, however, set aside by the trial court upon the ground that there was no evidence to support the answer of the jury thereto. Boutte challenges, vigorously, this action by the trial court.

1. Article 6, Section 1(b): "Any controversy between EMPLOYER and the ASSOCIATION as to whether or not any employee suspended or discharged for violation of any rule of EMPLOYER is guilty of such violation."

■ We will assume, for the purposes of this discussion, that the finding was (a) necessary to plaintiff's recovery notwithstanding Union's failure to defend, (b) was an ultimate issue, and (c) properly supported by the pleadings. Our review of the evidence will be under the rule announced by our Supreme Court in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951), looking only to the evidence favorable to the finding and disregarding all opposed thereto.

■ We well recognize the difficulty of establishing a conspiracy by direct evidence, for which reason the courts are extremely liberal in permitting proof by circumstantial evidence, declarations of alleged co-conspirators, etc., and cite only two of many cases so holding in the footnote.[2] The liberality of the evidentiary rules does not, however, eliminate the necessity of making proof of the existence of the conspiracy by competent evidence. Here, the only witness who touched the issue remotely was the plaintiff himself and we reproduce his own answer, the strongest evidence he gave on the subject, as to what his reasons were for believing that a conspiracy existed:

"Well, just what one man told me. The man that discharged me, Mr. Fedd, after all, when the union had voted on my case and everything, I went back down to the bus company to get my belongings, and as I was leaving, he come out and met me. And, he knew I was interested in electronics and he give me a radio that had been kicking around there and needed fixing and asked me if I wanted it and I told him 'yeah, I'd take it.' And he said, boy, I'm sure sorry about this. He said, I would have thought that the union would have done gotten you back

on to work. And, going from that, I feel like the man knew something that I didn't know, that there was a conspiracy, somewhere."

■ All competent evidence is that Price and Leffard were fair in their dealings with all employees; that Leffard treated all employees equally and alike; that Price represented all Union members fairly and alike and with equal dignity. Carlton, Trahan and Price comprised the Union Committee representing Boutte on his grievance. Leffard, Landry and Fedd comprised the Company Committee. The two committees did not meet, consider, or discuss Boutte's grievance without each side being fully represented. There is no evidence that Price and Leffard met secretly without the other members of the committees being present. There are no circumstances in evidence by which it could be inferred a conspiracy existed to prevent Boutte from getting his case to arbitration. Great National Life Insurance Co. v. Chapa, 377 S.W.2d 632 (Tex. Sup., 1964); State v. Standard Oil Company, 130 Tex. 313, 107 S.W.2d 550 (1937); Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp., 435 S.W.2d 854 (Tex.Sup., 1968). Considering only the evidence favorable to the jury's answer to Special Issue No. 3, we find none.

■ Plaintiff's evidence did not create even a surmise or suspicion and constituted no evidence upon which an affirmative answer to the issue could be based. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898); Texas Sling Co. v. Emanuel, 431 S.W.2d 538, 540 (Tex.Sup., 1968). To use the late Justice Norvell's words in *Emanuel*: "In our opinion, the [quoted] evidence furnishes nothing more than a basis for a surmise, guess or conjecture,

2. In San Antonio Gas Co. v. State, 22 Tex.Civ.App. 118, 54 S.W. 289, 292 (San Antonio Tex.Civ.App., 1899, error ref.), it is said: "Conspiracies, being in defiance of law, are conceived in secrecy, and executed in such a manner as to avoid detection and exposure; and proof

of such unlawful enterprises must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the transaction is legitimate and proper." See also: Jernigan v. Wainer, 12 Tex. 189 (1854).

and consequently Texas Sling's 'no evidence' points should be sustained." It follows, therefore, that we uphold the trial court's action in setting aside the conspiracy finding because there was no evidence to support the same.

In appellant's Point No. 3 the contention is the court erred in setting aside the jury's findings on Special Issue No. 26 on the ground that the same became immaterial by reason of lack of evidence to support Special Issue No. 3 because said Issue No. 26, being a main controlling issue, would support a judgment for the plaintiff irrespective of said finding on Special Issue No. 3.

The appellee in its motion to disregard the jury finding on Special Issue No. 26 did not contend there was no evidence to support the jury's answer to said issue. By its answer to Special Issue No. 26, the jury found that appellant was discharged by appellee without "just cause" as defined in an instruction. On the contrary, appellee's sole basis for disregarding No. 26 is as follows:

"The Defendant, Beaumont City Lines would submit that the only affirmative finding of the jury to support a judgment against this Defendant is the answer to special issue #3, i. e., that there was a conspiracy between D. H. Leffard, manager of Beaumont City Lines and E. E. Price, President of Division 1031, to prevent Plaintiff from being able to get his case to arbitration. Without an affirmative finding of misconduct on the part of the Defendant, Beaumont City Lines, the jury's answer to Special Issue #26 on 'discharge without just cause' is immaterial and will not support a judgment. Without a finding of 'conspiracy' or affirmative misconduct, a 'wrongful discharge is meaningless and without probative force.' "

3. These points are properly considered at this time since the judgment was rendered upon motion non obstante veredicto.

We are not in complete agreement with the contentions of either party. Boutte had predicated his cause of action for damages upon the provisions of Section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185). In order to prevail as the third-party beneficiary under the contract between Company and the Union, he must allege and prove that the Union had breached its duty to him under the Act itself. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The Union having the exclusive power under the contract to invoke the higher stages of the grievance procedure (i. e., arbitration), before Boutte could successfully prosecute his claim of wrongful discharge against the Company, he must establish a breach by the Union of its duties toward him. Such was a necessary prerequisite to his case under the rationale of *Vaca,* supra (386 U.S. 183–186, 87 S.Ct. 913–914, 17 L.Ed.2d 854–855).

In attempting to discharge this burden, Boutte procured favorable findings to Special Issues Nos. 28 and 29 which we now summarize: No. 28—The Union "failed to act reasonably and with diligence and good faith in the handling and processing of the grievance." No. 29— The Union "acted in an arbitrary and discriminatory manner in failing to take" the case to arbitration.

We have heretofore commented upon the lack of evidence of probative nature to support the issue of conspiracy and now turn to the evidence supporting these two issues. This is necessary because Company has assigned proper cross-points against these two issues asserting that there was no evidence to support Boutte's favorable answers.[3] In considering these cross-points, we do so considering only the evidence favorable to the finding.

There had been a long-standing dispute between Boutte and Company con-

Rule 324, T.R.C.P.; Jackson v. Ewton, 411 S.W.2d 715 (Tex.Sup., 1967).

cerning Boutte's efforts to enforce the no-smoking-in-bus ordinance of the City of Beaumont. Boutte had attempted to enforce the ordinance against the expressed policy of the Company that its bus drivers were hired to operate buses, not to act as policemen; and, if the City wanted the ordinances enforced, it could assign policemen to the buses. The dispute was well known to the Union and when Boutte appeared before the membership of the Union seeking support in authorizing the arbitration of his discharge, it again became the subject of discussion before the vote was taken. Boutte likewise took this facet of his complaint to the International President of the Union without avail. Boutte, up to and including his appearance before the Union membership, refused to promise obedience to the Company directives with reference to the no-smoking ordinance. Against this background of recalcitrance, it is not surprising that the membership refused to authorize the arbitration of his discharge. Nevertheless, after a full discussion of the cause of the discharge, the local Union in the democratic process of taking a vote, decided not to proceed to arbitration.

■ We take judicial knowledge of the fact that arbitration procedures in labor disputes are costly both to the Company and the Union. Whether or not a particular dispute would be submitted to arbitration was, under the facts as presented in the record, a matter for determination by the Union. We find no evidence of bad faith, arbitrary action, or discrimination in this determination so made by the rank and file of the Union. Company's points challenging Special Issues Nos. 28 and 29 are sustained.

Having failed to establish a cause of action against the Union, Boutte likewise failed to establish his right to assert a cause of action against the Company. Vaca v. Sipes, supra. So holding, the trial court's action in setting aside the finding to Special Issue No. 26 because

it was immaterial was correct and is now affirmed.

STEPHENSON, Justice (dissenting).

I respectfully dissent. THIS CASE SHOULD BE REVERSED AND RENDERED. I agree with the majority opinion that a reasonable construction of the motion for judgment non obstante veredicto is that the bus company contended there was no evidence to support the jury finding as to Special Issue 3, and that the answer to Issue 26 was immaterial. I agree that this motion for judgment non obstante veredicto could not be a basis for the trial court to disregard Special Issue 26 on the ground that there was no evidence to support it.

The ultimate issue in a wrongful discharge case must be whether the fact or combination of facts constituted good cause for discharge. Dixie Glass Co. v. Pollak, 341 S.W.2d 530, 91 A.L.R.2d 662 (Houston Tex.Civ.App., 1960, error ref. n. r. e.). See Ingram v. Dallas County Water Control & Imp. Dist., 425 S.W.2d 366 (Dallas Tex. Civ.App., 1968, no writ).

The jury having answered the ultimate issue (26) in appellant's favor, the answer to Issues 17 and 18 (evidentiary only) were immaterial, and appellant was entitled to judgment.

I do not agree that this court can consider the appellee's cross points as to Special Issues 28 and 29. There is no basis in the trial court for this to be considered here, and Rule 324 has no application to this situation. There is nothing in the motion for judgment non obstante even suggesting that Issue 26 should be disregarded because Issues 28 and 29 had no support in the evidence. As shown in the majority opinion, the only reason assigned for disregarding Issue 26 was that there was no evidence to support Issue 3, and therefore Issue 26 was immaterial. There is nothing in our record to indicate appellee objected to the submission of Issues 28 and 29 because there was no evidence to support them,

and therefore the trial court never had an opportunity to pass upon the point this court is basing its affirmation upon. Rule 324 cannot serve as a basis for the consideration. The law is clear in Texas that for Rule 324 to have the application given to it by the majority, that this court can consider only the cross points raised by appellee in its motion filed in the trial court. Motsenbocker v. Wyatt, 369 S.W.2d 319 (Tex.Sup., 1963).

The defendant Union did not appeal from the judgment of the trial court against it, which means it has no points or counter points raising questions as to the lack of evidence to support Issues 28 and 29. The contract between the Union and Beaumont City Lines provided that an employee who is discharged has a right to have his case taken up by the Union, and if it is found that he was not guilty of the charge, he is entitled to be reinstated and paid for all time lost. The jury found in answer to Special Issues 28 and 29 that the Union failed to act reasonably and with diligence and with good faith in handling plaintiff's grievance, and that the Union acted in an arbitrary and discriminatory manner in failing to take plaintiff's case to arbitration. Under the Vaca v. Sipes Case, supra, plaintiff was free to proceed against his employers for lost wages.

KEITH, Justice (concurring).

I regret the necessity of filing this concurring opinion, but feel that it is required by the language found in the last paragraph of the dissent. We find ourselves in the unenviable position of having to leave standing a judgment against a labor union which has no foundation in either law or in fact. This is so for the reason that no appeal was taken from that part of the judgment and we are powerless to set it aside. As has been pointed out by Judge Parker in his opinion, there is absolutely no evidence in this record that the Union violated its duty toward plaintiff; and, consequently, under

*Vaca,* plaintiff had no cause of action against either the Union or the Company.

Many years ago, Chief Justice Alexander, in Smirl v. Globe Laboratories, 144 Tex. 41, 188 S.W.2d 676, 678 (1945) [quoting from Texas Employers' Insurance Association v. Evans, 117 Tex. 113, 298 S.W. 516, 520 (1927)] said:

> " 'The office of a rule of procedure is to facilitate, rather than hinder, a speedy and final determination of all law suits in that way which will secure to litigants their substantial rights and to promote the peace and good order of the state.' "

He then continued:

> "This Court has always held that where a practice is established by a rule of court it is competent for the court so to adapt its exercise as to prevent any particular oppression and to make it yield to the particular circumstances of the case."

Granted that this court is much more restricted in its authority to "adapt", still it does not seem that we should be constricted so that we are required to perpetrate an injustice in order to accommodate ourselves to a rule of doubtful applicability. Such a situation may come about when there is no other solution; but, I submit, this is not such a case.

I do not read *Motsenbocker* as does my Brother Stephenson, nor do I believe that Rule 324, T.R.C.P. *compels* us to render an unconscionable and unfounded judgment against the Company. Before the amendment of Rule 324 in 1957, it provided:

> "When judgment is rendered non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, the appellee may complain of any prejudicial error committed against him *over his objection* on the trial. A motion for new trial shall not be necessary in behalf of appellee where he does not complain of the judgment or a part thereof." (Emphasis supplied.)

The italicized phrase was omitted in the 1957 amendment and this language was substituted therefor:

"When judgment is rendered non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, the appellee may bring forward by cross-point contained in his brief filed in the Court of Civil Appeals *any ground* which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict, including although not limited to the ground that one or more of a jury's findings have insufficient support in the evidence or are against the overwhelming preponderance of the evidence as a matter of fact, * * *" (Emphasis supplied.)

I note, particularly, that the amendment omits the requirement that the cross-point be confined to prejudicial error committed over his objection. The omission of this requirement must have some significance; and, I submit that it was designed for just such a case as this: when a court would otherwise be so hamstrung by procedural rules that it would be powerless to do other than to render a judgment contrary to the law and the facts.

Recognizing the necessity of acting under the Rules, Civil Procedure, and standing firmly for the proposition that litigants should comply therewith, nevertheless, I feel bound by Rule 1:

"The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law."

The substantive law governing the rights of the litigants is clear and has been enunciated by our court of last resort in *Vaca*. We should construe our procedural rules in such manner as to bring about a just, fair, and equitable adjudication thereof. The majority opinion accomplishes this in-

sofar as the Company is concerned; my only regret is that I must join in an affirmance of an erroneous judgment against the Union; but, as to the latter, there is no way out.